13 P.3d 280

Michelyn WILLIAMS and Kelly
Williams, Plaintiffs–
Appellants,

v.

LAKEVIEW CO., a Nevada general part-
nership d/b/a Gold Strike Inn & Casino;
David R. Belding, partner; Michael S.
Ensign, partner; William A. Richardson,
partner; David R. Belding and Jane Doe
Belding, husband and wife; Michael S.
Ensign and Jane Doe Ensign, husband
and wife; William A. Richardson and
Jane Doe Richardson, husband and wife,
Defendants–Appellees.

No. CV–99–0364–PR.

Supreme Court of Arizona,
En Banc.

Nov. 9, 2000.

**2**

Law Offices of Keith S. Knochel, P.C. by Keith S. Knochel, Bullhead City, Attorneys for Michelyn and Kelly Williams.

Jennings, Strouss & Salmon by James M. Ackerman, H. Christian Bode, David B. Earl, Phoenix, Attorneys for Lakeview Co.

## OPINION

McGREGOR, Justice.

¶ 1 We granted review to decide whether Arizona courts may exercise specific jurisdiction over a personal injury action brought by residents of Mohave County, Arizona, against a Nevada casino for damages caused by the casino's service of liquor in Nevada to an intoxicated patron. The casino regularly and continuously advertises in Arizona, solicits Arizona tour bus trade, and employs a number of Arizona residents. For the following reasons, we hold that absent a causal connection between the casino's Arizona contacts and the plaintiffs' claims, specific jurisdiction does not attach.

### I.

¶ 2 On February 8, 1997, Michelyn Williams and Kelly Williams (the plaintiffs) traveled to Boulder City, Nevada, with Patrick Kelsey, Jr. While in Nevada, the trio visited the Gold Strike Inn & Casino, a business located just past the Arizona border and owned by a Nevada general partnership, Lakeview Company. At the casino, Mr. Kelsey consumed a large amount of alcohol. Although the plaintiffs were concerned about Mr. Kelsey's intoxication level, they allowed him to drive on the return trip to Arizona. Once over the state line, he lost control of the

car, and the plaintiffs received serious injuries in the resulting single-car accident.

¶ 3 The plaintiffs filed suit in Arizona against Lakeview and its partners. On Lakeview's motion, the trial court dismissed the case for lack of personal jurisdiction. The court of appeals reversed, holding that although Lakeview had insufficient contacts with Arizona to create general jurisdiction over it and its partners, the plaintiffs' injuries were sufficiently related to the existing contacts to permit the court to exercise specific jurisdiction.

¶ 4 We exercise jurisdiction pursuant to Arizona Constitution, article VI, section 5(3), Arizona Revised Statutes Annotated (A.R.S.) § 12–120.24, and Arizona Rule of Civil Appellate Procedure 23.

## II.

¶ 5 The basic principles that govern. Arizona's authority to exercise personal jurisdiction over a non-resident defendant are familiar and well-established, *see generally, e.g., Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 736 P.2d 2 (1987), and we address them only briefly. The Due Process Clause limits state court jurisdiction over foreign defendants. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). Because Arizona's long-arm rule confers jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause, "[t]he jurisdictional issue ... hinges on federal law." *Uberti v. Leonardo,* 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995).

¶ 6 The personal jurisdiction test, set out in *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), requires that the defendant have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Personal jurisdiction may be divided into two types: (1) general jurisdiction and (2) specific juris-

diction. Under either specific or general jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. A non-resident defendant is subject to general jurisdiction when the defendant's contacts with the forum state are substantial or continuous and systematic enough that the defendant may be haled into court in the forum, even for claims unrelated to the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The level of contact required to show general jurisdiction is quite high.[1]

¶ 7 When a defendant's activities in the forum state are not so pervasive as to subject it to general jurisdiction, the court may still find specific jurisdiction if: (1) the defendant purposefully avails himself of the privilege of conducting business in the forum; (2) the claim arises out of or relates to the defendant's contact with the forum; and (3) the exercise of jurisdiction is reasonable. *See Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir.1990), *reversed on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Although specific jurisdiction may arise without the defendant ever setting foot in the forum state, and may arise incident to a single act directed to the forum, it does not arise from the plaintiff's or a third party's unilateral activity or from the non-resident defendant's mere foreseeability that a claim may arise. *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 295–97, 100 S.Ct. 559, 566–67, 62 L.Ed.2d 490 (1980). Once the plaintiff establishes that minimum contacts occurred with the forum state and that the events causing the injury arose out of that contact, a rebuttable presumption arises that the forum reasonably can exercise jurisdiction. *See Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184.

¶ 8 We cannot decide the issue of personal jurisdiction, however, by applying

---

1. The court of appeals held that Lakeview's contacts with Arizona were not sufficiently continuous and systematic to permit Arizona to exercise general jurisdiction. *See Williams v. Lakeview,* 195 Ariz. 468, 990 P.2d 669 (App.1999). The plaintiffs did not file a cross-petition for review from that holding, so we do not address that issue.

any mechanical test or "talismanic jurisdictional formulas; 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 485–86, 105 S.Ct. at 2189 (quoting *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978)) (alterations in original).

## III.

### A.

■ ¶ 9 The Gold Strike Inn & Casino is located within a few miles of the Arizona/Nevada border. The Lakeview partnership conducts no business in Arizona, owns no property in Arizona, and does not list a telephone number in any Arizona directory. Furthermore, the Lakeview partners are all residents of the state of Nevada.

¶ 10 The plaintiffs claim that several activities involving Lakeview create the required minimum contacts with Arizona. First, the casino advertised its weekly dinner buffet in Arizona newspapers, including a small Mohave County paper that circulated once each month. Second, the casino sent a one-time offer to eleven tour bus companies that operated throughout Arizona, offering them incentives to stop at the casino on their way into Nevada. Third, the casino employed Arizona residents, and, at the time of the accident, approximately twenty-three percent of its overnight guests were Arizona residents. The plaintiffs also allege that Lakeview could foresee that some Arizona residents would become intoxicated at the casino and subsequently cause harm to themselves or others while driving on Arizona highways. The plaintiffs concede that their visit was not related to any of Lakeview's contacts with Arizona, and that the only contact they personally had with the casino resulted from their unilateral decision to visit it.

### B.

■ ¶ 11 The requirement that a nexus exist between a defendant's activities in the forum state and a plaintiff's cause of action provides the key to exercising specific jurisdiction. A plaintiff's claim must result from "alleged injuries that 'arise out of or relate to' [the defendant's] ... activities" in the forum state. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872). This test ensures that forums will not exercise jurisdiction over non-resident defendants based solely upon random, fortuitous, or attenuated contacts, or upon the unilateral activity of another person. Instead, we must focus on the relationship between the defendant, the forum, and the litigation. *See Batton,* 153 Ariz. at 271, 736 P.2d at 5. The nexus requirement goes to the very heart of minimum contacts and creates the distinction between specific and general jurisdiction.

¶ 12 Federal courts have disagreed about the strength of the causal relationship that must exist between a defendant's forum activities and a plaintiff's claim. Some courts have adopted a substantive test that requires that the defendant's contacts with the forum serve as the proximate cause of an injury, while others have adopted a "but for" test, under which a nexus exists if a plaintiff's injury would not have occurred but for a defendant's forum activities. *Compare, e.g., Pizarro v. Hoteles Concorde Int'l,* 907 F.2d 1256, 1260 (1st Cir.1990) (holding a defendant's solicitation of tourist reservations in the forum state was not the proximate cause of injuries occurring in an Aruba hotel), *with Shute,* 897 F.2d at 386 (finding that when the plaintiff would not have taken a cruise but for defendant's solicitations in the forum state, nexus existed). Even under the more liberal "but for" test, however, the plaintiffs here cannot establish the required nexus.

■ ¶ 13 Unlike the plaintiff in *Shute,* the plaintiffs do not assert that their visit to the casino resulted from any of Lakeview's contacts with Arizona. They did not visit the casino after seeing or in response to an advertisement, and they never traveled to Nevada on a tour bus. Their injuries did not arise out of or relate to Lakeview's employment relationship with or hotel service to Arizona residents.[2] The failure to show any

---

**2.** We express some doubt that Lakeview's decision to employ or offer hotel service to Arizona

causal connection between Lakeview's Arizona activity and their claim is fatal to the plaintiffs' argument. As the court emphasized in *Shute:*

> Under [the "but for"] ... test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction. The "but for" test preserves the requirement that there be *some nexus* between the cause of action and the defendant's activities in the forum.

*Shute,* 897 F.2d at 385 (citations omitted) (emphasis added). Because the plaintiffs established no nexus between their cause of action and Lakeview's activities in Arizona, our courts cannot assert specific jurisdiction over Lakeview. The plaintiffs do not challenge the court of appeals' conclusion that Lakeview's contacts are not sufficient to permit Arizona to assert general jurisdiction. If we were to assert specific jurisdiction based upon those same contacts in the absence of any nexus between Lakeview's contacts with Arizona and the plaintiffs' claim, we would effectively obliterate the distinction between general and specific jurisdiction. The Due Process Clause does not permit us to do so.[3]

¶ 14 Other courts have grappled with the "arising out of or related to" nexus requirement as it relates to non-resident advertising in the forum state and have reached differing conclusions. *See, e.g., Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 337 (D.C. 2000) (holding that because the plaintiff's claim had a discernible relationship to the defendant's extensive advertising in the forum, even when she did not claim to personally see the ads, the defendant could reasonably anticipate being haled into court there). *But see, e.g., Wims v. Beach Terrace Motor Inn, Inc.,* 759 F.Supp. 264, 270 (E.D.Pa.1991) (holding that the plaintiff's injury in the defendant's hotel was too attenuated from the defendant's business solicitations in the forum state to confer jurisdiction, even when the plaintiff went to the hotel solely because she received the hotel's promotional brochure); *Westphal v. Mace,* 671 F.Supp. 665, 667–68 (D.Ariz.1987) (rejecting the argument that the dependency of a Nevada casino on Arizona residents and its continuous advertisements in the forum state are sufficient to confer jurisdiction because there was no nexus between the injury and the contacts and because the plaintiff merely felt the effect of the injury in the forum state); *Erickson v. Spore,* 618 F.Supp. 1356, 1359–60 (D.Minn. 1985) (finding personal jurisdiction was lacking when the plaintiff never saw or heard any of the defendant's advertising in the forum state and when his decision to go to the defendant's business was not related to the advertising); *Mozdy v. Lopez,* 197 Mich.App. 356, 494 N.W.2d 866, 868–69 (1992) (holding that advertisements in the forum state were an insufficient basis for personal jurisdiction when the advertisements had no causal connection to the injury). We believe the better-reasoned cases are those which require a causal nexus between the defendant's solicitation activities and the plaintiff's claims, a

residents can be regarded as actions showing that Lakeview purposefully availed itself of the privilege of conducting business in Arizona. The Supreme Court consistently has held that the unilateral act of a third party does not, alone, create a minimum contact. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958), *see also Wims v. Beach Terrace Motor Inn, Inc.,* 759 F.Supp. 264, 270 (E.D.Pa.1991) (holding the fact that approximately ten percent of defendant's employees were residents of the forum state was "irrelevant to the issue of personal jurisdiction" when no evidence showed that the employee relationship reflected the defendant's "activities in or directed toward" the forum state). Without additional information, we cannot assume these contacts relate to Lakeview's decision to conduct any business in Arizona. For purposes of this opinion, however, we assume sufficient contacts to meet the minimal contacts requirement of the jurisdictional test.

3. We respectfully disagree with the dissent's assertion that general and specific jurisdiction "lie on the same broad spectrum" and simply involve "varying degrees of relationship." Dissent, *infra* ¶__. Once we conclude that a defendant's contacts with the forum cannot sustain the exercise of general jurisdiction, our focus shifts from considering primarily the defendant's contacts with the forum to considering the relationship among the defendant, the forum, and the claim asserted. *See, e.g., Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) and *Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 736 P.2d 2 (1987).

requirement we conclude the Due Process Clause imposes.

¶ 15 The plaintiffs also argue that we should assert jurisdiction because Lakeview should have foreseen that one of its Arizona patrons might consume alcohol to excess, cross the state line, and become involved in an accident. Foreseeability, however, does not confer jurisdiction. In *Burger King*, the Supreme ·Court specifically rejected this argument: "Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there ..., the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 295, 100 S.Ct. at 566) (emphasis in original). Foreseeability, relevant as it may be to the defendant's liability, cannot substitute for the required causal nexus between the defendant's contact with the forum state and an eventual injury.

### C.

· ¶ 16 Although the plaintiffs do not argue that section 37 of the Restatement (Second) of Conflict of Laws provides a basis upon which Arizona courts can rely in asserting personal jurisdiction over the defendants, the dissent finds that provision persuasive. Significantly, when Arizona's appellate courts handed down the two decisions cited by the dissent,[4] the standards governing the exercise of specific jurisdiction by state courts were relatively unclear. After the dates of those Arizona decisions, the Supreme Court defined the appropriate analysis in decisions such as *World Wide Volkswagen v. Woodson, Helicopteros Nacionales de Colombia S.A. v. Hall,* and *Burger King Corp. v. Rudzewicz,* an analysis we necessarily adopted in *Batton*

---

**4.** See *Chavez v. State of Indiana,* 122 Ariz. 560, 596 P.2d 698 (App.1979) and *Powder Horn Nursery, Inc. v. Soil & Plant Laboratory, Inc.,* 20 Ariz.App. 517, 514 P.2d 270 (1973).

**5.** In *Hoskinson v. State of California,* 168 Ariz. 250, 812 P.2d 1068 (App.1990), the Court of Appeals rejected the plaintiffs' argument based upon sections 36 and 37 of the Restatement (Second) of Conflicts, relying instead upon the

*v. Tennessee Farmers Mut. Ins. Co.*[5] Had the plaintiffs filed this action in Nevada, the courts of that state might well have applied choice of law principles in a manner that would allow Arizona law to control this action. Those principles, however, determine which state's law should apply, not whether a particular state can exercise specific jurisdiction over a particular defendant.

### D.

¶ 17 Our jurisdictional analysis must focus on the relationship among Lakeview, Arizona, and the plaintiffs' claim. In undertaking that analysis, we must bear in mind the following caution:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World–Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 565–66.

¶ 18 The relationship among Lakeview, Arizona, and the plaintiffs' claim does not permit Arizona to exercise specific jurisdiction.

### IV.

¶ 19 For the foregoing reasons, we vacate the opinion of the court of appeals, and affirm the trial court's judgment.

CONCURRING: FREDERICK J. MARTONE, Justice, and JOHN PELANDER, Judge. *

---

test set out in *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

\* Vice Chief Justice Charles E. Jones did not participate in the determination of this matter. Pursuant to article VI, section 3 of the Arizona Constitution, the Honorable John Pelander, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in his stead.

ZLAKET, Chief Justice, dissenting.

¶ 20 I believe the court of appeals' opinion is correct and would not disturb it.

### I.

¶ 21 The majority's analysis too narrowly relies on causal nexus as the linchpin of specific jurisdiction. Such a strict approach invites absurd and unjust results. Consider this hypothetical: Suppose another Arizona resident was intentionally or negligently overserved with alcohol by the defendant's casino on the day of the accident. After crossing the border to go home, this person was also involved in a collision and sustained serious injuries. Unlike the plaintiffs, however, he claims to have been drawn to the casino by an advertisement in the *Cerbat Gem.* Under the majority's approach as I understand it, our hypothetical motorist could likely sue Lakeview in Arizona, even though the plaintiffs cannot. This would be so despite the fact that *Lakeview's activities were exactly the same in each case.*[1] Due process, in my judgment, cannot rest on such a weak distinction.[2]

¶ 22 The focus of any due process analysis must be on the *defendant's* conduct. The majority turns this principle on its head by concentrating instead on the reasons for the plaintiffs' behavior. But it is fairness to the defendant that lies at the heart of the inquiry. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 427, 104 S.Ct. 1868, 1879, 80 L.Ed.2d 404 (1984) (Brennan, J., dissenting) ("At least since *International Shoe* ... the principal focus ... has been on fairness and reasonableness to the defendant.") (citation omitted). I submit that there would be no difference in fairness if we were to require the casino to appear and defend in Arizona against either our hypothetical citizen or these very real plaintiffs.

¶ 23 "When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the [Supreme] Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). The test to be applied is whether the claim "is related to *or* 'arises out of' " contacts with this state. *Id.* (emphasis added). The Supreme Court's use of the disjunctive "or" between "arises out of" and "related to" suggests that these two phrases refer to "substantial[lly] differen[t] ... standards for asserting specific jurisdiction." *Id.* at 425, 104 S.Ct. at 1878 (Brennan, J., dissenting). The majority in *Helicopteros* declined to pursue this distinction because the case was framed only in terms of "continuous and systematic" contacts required for a finding of general jurisdiction.[3] *Id.* at 415–16, 104 S.Ct. at 1872–73. Nevertheless, other courts have recognized the difference. *See, e.g., Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994) ("For our part, we think it significant that the constitutional catchphrase is disjunctive in nature....."); *Third Nat. Bank in Nashville v. WEDGE Group Inc.,* 882 F.2d 1087, 1091 (6th Cir. 1989) (stating that specific jurisdiction "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.' "); *Thomason v. Chemical Bank,* 234 Conn. 281, 661 A.2d 595, 600 n. 4 (1995) (opining that the "arising out of" language refers to a causal relationship, whereas "relates to" does not).

1. The example becomes even more compelling if we make the hypothetical plaintiff a passenger in the same car with Michelyn and Kelly Williams. Can it be that he can sue in Arizona, but they cannot?

2. The causal nexus requirement, as explained by the majority, is so insubstantial that it easily lends itself to fabrication. After today's decision, I rather suspect that any similarly situated but unscrupulous plaintiff would claim to have seen at least one of the out-of-state defendant's advertisements here in Arizona.

3. Thus, it was unnecessary for the Court to determine "whether the terms 'arising out of' and 'related to' described different connections between a cause of action and a defendant's contacts with a forum." *Helicopteros,* 466 U.S. at 415 n. 10, 104 S.Ct. at 1872 n. 10.

¶ 24 In *Lawson v. Darrington,* 416 N.W.2d 841 (Minn.Ct.App.1987), the court held that specific jurisdiction could be exercised over an Iowa liquor vendor despite the fact that the defendant's Minnesota advertisements did not cause the plaintiffs to visit its bar. The facts are strikingly similar to those here. Darrington drove himself and Lawson from their home in Minnesota to a bar in Iowa, twelve miles south of the state line. While there, the bar served drinks to Darrington, who was a minor at the time. After the men crossed the border on their way home, the car crashed and both of them were injured. Lawson sued the bar in a Minnesota state court.

¶ 25 The defendant argued that the court lacked personal jurisdiction without a judicial finding that its advertising activities in Minnesota "directly caused" Lawson and Darrington to travel to Iowa. *Id.* at 844. The court responded:

> We disagree with this narrow interpretation. Due process is satisfied by a showing that the Minnesota activities of the nonresident liquor vendor relate to the operation of the bar and solicitation of Minnesota residents. . . .
>
> . . . .
>
> . . . [The bar] actively solicited customers in Minnesota to come to Iowa to drink. . . . [The bar] could reasonably anticipate being hailed into Minnesota courts for injuries incurred by Minnesota residents on a return trip from [its] Iowa establishment.

*Id.* at 844–45.[4]

¶ 26 In *Shoppers Food Warehouse v. Moreno,* 746 A.2d 320 (D.C.Cir.2000)(en banc), a Maryland-based grocery chain regularly advertised in District of Columbia newspapers. Ms. Moreno was a D.C. resident who visited one of Shoppers' stores and was injured. She had never seen any of the ads. Nevertheless, the court held that District of Columbia courts could exercise specific jurisdiction over the defendant because the plaintiff's claim was *related to* the company's activities in the District. Because Shoppers regularly solicited D.C. residents, the court concluded that it "could be sued in the District on a claim similar to that filed by Ms. Moreno." *Id.* at 336. The plaintiff was among a class of persons targeted by the ads—i.e., District of Columbia customers. Thus, the defendant could reasonably expect to be haled into court in that jurisdiction.

¶ 27 Today's majority fears that allowing an Arizona action "in the absence of any nexus" will obliterate the difference between general and specific jurisdiction. *Supra* at ¶ 13. But that implies the existence of two completely separate and distinct, isolated and dissimilar, classes of jurisdiction, a concept with which I respectfully disagree. In my view, we should analyze the present issue as one involving varying degrees of relationship. General and specific jurisdiction lie on the same broad spectrum, ranging from specific contacts which directly cause a claim, to general, systematic, and continuous contacts that may be totally unrelated to the claim. Causes of action that "relate to," but do not necessarily "arise out of" a defendant's contacts with the forum fall along this spectrum. They do not automatically fail for lack of a specific causal connection, as the majority's view would dictate, but instead must be examined for other factors that enter into the due process equation.

¶ 28 Due process requires "fair warning" to a nonresident defendant that a particular activity will subject it to suit in a foreign jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Lakeview targeted Arizona residents by advertising in Arizona newspapers. The casino ran full-page ads in every issue of the *Cerbat Gem,* trumpeting "WE *LOVE* OUR ARIZONA NEIGHBORS." In addition, the defendant solicited tour bus companies in this state to bring more Arizonans to its hotel and casino.

4.  Other courts, too, have found specific jurisdiction on similar facts. *See, e.g., BLC Ins. Co. v. Westin, Inc.,* 359 N.W.2d 752 (Minn.Ct.App. 1985); *Wimmer v. Koenigseder,* 128 Ill.App.3d 157, 83 Ill.Dec. 368, 470 N.E.2d 326 (1984), *rev'd on other grounds,* 108 Ill.2d 435, 92 Ill.Dec. 233, 484 N.E.2d 1088 (1985); *Young v. Gilbert,* 121 N.J.Super. 78, 296 A.2d 87 (Law Div.1972). For an overview of this subject, see James B. Lewis, *Sale of Alcohol to Interstate Travelers: Personal Jurisdiction and Choice of Law Analyses,* 39 Drake L.Rev. 349 (1990).

As an incentive, it paid commissions to these operators based on the amount of time their buses spent at the casino.

¶ 29 As a result of these contacts, Defendant's business has made significant money from Arizona residents. At the time of the accident, nearly 25% of the Gold Strike Inn's guests, and about 17% of its preferred customers, were from this state. As the Supreme Court said in *Burger King*, once a defendant purposely derives benefit from his contacts with another state, it cannot then use the Due Process Clause as a "territorial shield" to avoid the obligations that flow from those contacts. 471 U.S. at 473–74, 105 S.Ct. at 2183; *see also Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir.1996) (upholding jurisdiction over a foreign defendant that "directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose").

¶ 30 Lakeview advertised in Arizona with the clear intent of enticing people to cross the state line and frequent the casino. Like all advertisers, it hoped these efforts would increase public awareness. That, in turn, would result in new customers who had either seen the ads themselves, or heard about the casino from others who may have observed or been told about them. The majority's analysis simply fails to consider such self-evident, "word-of-mouth" effects of prolonged advertising in a targeted area.

¶ 31 It is clear that the plaintiffs were within the class of persons Lakeview intended to draw, even though they had not personally seen the ads. They went to the casino to gamble, as did many other Arizonans. The injuries forming the basis of this cause of action occurred in Arizona and, we assume

for purposes of our review, resulted from the defendant's overservice of alcohol in Nevada.[5]

¶ 32 Lakeview cannot seriously claim ignorance that its activities might have subjected it to suit in Arizona. Moreover, as noted by the court of appeals, *see Williams v. Lakeview Co.*, 195 Ariz. 468, 474, 990 P.2d 669, 675 (Ariz.Ct.App.1999), the defendant has not asserted that the exercise of jurisdiction over it would be unreasonably burdensome. Thus, I see no constitutional impediment to Arizona jurisdiction.

II.

¶ 33 The majority all but ignores section 37 of the Restatement (Second) of Conflict of Laws, which reads as follows:

§ 37. CAUSING EFFECTS IN STATE BY ACT DONE ELSEWHERE

A state has *power to exercise judicial jurisdiction over an individual* who causes effects in the state by an act done elsewhere with respect to any claim arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.

(emphasis added). We have considered this section in past discussions of personal jurisdiction. *See Chavez v. State of Indiana*, 122 Ariz. 560, 562, 596 P.2d 698, 700 (1979)(quoting at length § 37 and its comment). The court of appeals has also paid it some attention. *See Powder Horn Nursery, Inc. v. Soil & Plant Laboratory, Inc.*, 20 Ariz.App. 517, 523, 514 P.2d 270, 276 (1973)(referring to Comment a of § 37 in support of the proposition that foreseeability would have prime importance to a minimum contacts analysis).[6]

---

5. Because Lakeview moved to dismiss for lack of personal jurisdiction, we must treat the factual assertions in the plaintiffs' complaint as being accurate. *See G.T. Helicopters, Inc. v. Helicopters, Ltd.*, 135 Ariz. 380, 382, 661 P.2d 230, 232 (Ariz.Ct.App.1983) ("In reviewing a motion to dismiss, this court accepts all material facts as alleged by the non-movant as true.").

6. The majority questions the applicability of *Chavez* and *Powder Horn*, and their reliance on § 37, because they pre-date the Supreme Court's decisions in *World–Wide Volkswagen* (1980), *Helicopteros Nacionales de Colombia* (1984), and

*Burger King* (1985). *Supra* at ¶ 16. It is significant, however, that three years after *Burger King*, the American Law Institute undertook a revision of the Restatement and did not make any substantive changes to § 37. Had the ALI believed that recent Supreme Court decisions called into question the validity of § 37, it presumably would have taken steps to address the matter. Instead, it simply *removed* a caveat regarding the First and Fourteenth Amendments, and cited to *World–Wide Volkswagen* in support of its acknowledgment that foreseeability *alone* is not enough to confer jurisdiction. *See* Reporter's Note to § 37 (Supp.1989). Today, fifteen years

Courts in other states have relied on it as well. *See, e.g., Braband v. Beech Aircraft,* 51 Ill.App.3d 296, 9 Ill.Dec. 684, 367 N.E.2d 118, 123 (1977)(citing § 37 in support of its exercise of jurisdiction over an airplane manufacturer that had no contacts with Illinois other than post-sale use of the plane in the state); *Wendt v. County of Osceola, Iowa,* 289 N.W.2d 67, 69–70 (Minn.1979)(considering § 37 in allowing a Minnesota suit against an Iowa county for failure to post adequate road signs).

¶ 34 Assuming the veracity of the complaint, as we must, there can be no question that Lakeview caused "effects" to occur in Arizona by its conduct in Nevada. Therefore, the only remaining issue under the Restatement is whether the nature of these effects and the relationship between Lakeview and Arizona are such that our exercise of jurisdiction over the defendant would be unreasonable.

¶ 35 Comment c to § 37 sets forth criteria for making such a determination. They include "the extent of the relationship of the state to the defendant and to the plaintiff, the nature and quality of the effects resulting from the act, the degree of inconvenience ... to the defendant ... and, conversely, the degree of inconvenience that the plaintiff would suffer." In addition, comment e discusses at length the foreseeability of the injury. Conspicuously absent is a strict requirement of causal nexus between the defendant's activities within the state and the injury. Rather, the inquiry focuses almost exclusively on reasonableness in light of the factors listed above.

¶ 36 This multi-faceted approach is perfectly in keeping with the long line of Supreme Court decisions forming the backbone of specific jurisdiction law. "[C]ourts in appropri-

ate case[s] may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)) (internal quotation marks omitted).

¶ 37 In my judgment, the majority cuts too fine a line when it limits today's analysis to a lack of direct causation. I see no reason why Lakeview should not be made to answer in Arizona for the effects of its Nevada conduct occurring here. The defendant has clearly established a relationship with the State of Arizona through its advertising, solicitation of tour buses, employment of citizens, and garnering of business.[7] It has made no claim that litigation in Arizona will be unreasonably inconvenient. The plaintiffs are citizens of this state, giving Arizona a legitimate interest in protecting their well being and access to justice.[8] The state also has a strong interest in making sure that its highways are free from drunk drivers. Finally, this occurrence was foreseeable, considering Lakeview's service of alcohol, proximity to the border, and success in attracting Arizona residents to its casino. The combination of these factors meets the reasonableness requirement of § 37 of the Restatement.

¶ 38 I would affirm the judgment of the court of appeals.

CONCURRING: STANLEY G. FELDMAN, Justice.

---

after *Burger King,* § 37 still refers to the exercise of jurisdiction. Neither its text, nor the comments supporting it, have been limited to "choice of law principles." *See supra* at ¶ 16.

7.  These facts clearly distinguish the present case from *Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 736 P.2d 2 (1987), cited by the majority. In *Batton,* the defendant did not purposefully do *anything* to establish contact with Arizona. *See id.* at 274, 736 P.2d at 8. Interestingly, two members of this court later called for

a reexamination of the conclusions reached in *Batton. See Hoskinson v. State of California,* 168 Ariz. 177, 178, 812 P.2d 995, 996 (1991).

8.  It is suggested in the record that Nevada law, unlike Arizona law, would afford the plaintiffs little or no relief for this type of claim. It also is unclear whether Nevada courts would apply Arizona law, despite the fact that the accident occurred here. *See, e.g., Motenko v. MGM Dist., Inc.,* 112 Nev. 1038, 921 P.2d 933 (1996).