125 P.3d 389

**Mark Andrew AUSTIN, Plaintiff–Appellant,**

v.

**CRYSTALTECH WEB HOSTING, an Arizona corporation; John M. Daniels aka Jack Daniels, d/b/a, PT Bali Discovery Tours, Defendants–Appellees.**

**No. 1 CA–CV 04–0823.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 22, 2005.

---

Britt & Bluff, P.C., By Edward H. Britt, Kathryn A. Battock, Phoenix, Attorneys for Plaintiff–Appellant.

Hopkins & Kreamer L.L.P., By Stephen M. Hopkins, Gregorio M. Garcia, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked to determine whether section 509 of the Communications Decency Act of 1996 [1] (the "CDA") bars a defamation claim and related state tort claims against an interactive computer services provider.[2] We also examine whether the court had personal

---

**1.** 47 U.S.C. § 230 (1996).

**2.** The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). There is no dispute that CrystalTech falls within this definition.

jurisdiction over John M. Daniels ("Daniels"), a resident of Bali, Indonesia. For the reasons discussed below, we affirm the superior court's rulings.

## BACKGROUND

¶ 2 Mark A. Austin ("Austin") and Daniels operate separate travel-related businesses in Bali. CrystalTech Web Hosting ("Crystal-Tech"), an Arizona corporation, operates an internet website hosting company in Maricopa County, and provides website services for Daniels' business, Bali Discovery Tours.

¶ 3 Austin sued Daniels after an article appeared on the Bali Discovery Tours' website alleging that Bali officials were going to file criminal charges against Austin. He sued CrystalTech because it refused to remove the allegedly defamatory statements from the Bali Discovery Tours website.

¶ 4 CrystalTech moved for summary judgment, and argued that the CDA granted it immunity from Austin's state court claims. Daniels then moved to dismiss the complaint for lack of personal service and lack of personal jurisdiction.[3] The superior court granted CrystalTech's motion, and dismissed the claims against Daniels because he did not have sufficient minimum contacts with Arizona to establish personal jurisdiction.[4]

¶ 5 Austin appealed the signed minute entry order. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

### I. Communications Decency Act

¶ 6 Austin challenges the superior court's determination that CrystalTech was entitled to summary judgment as a matter of law. We review the ruling *de novo*. *Ariz. Joint Venture v. Ariz. Dep't. of Revenue*, 205 Ariz. 50, 53, ¶ 14, 66 P.3d 771, 774 (App.2002).

¶ 7 CrystalTech contends that the CDA grants it immunity from state tort claims. Austin challenges that interpretation, and ar-

gues that because the federal statute only applies to claims against the primary publisher of defamatory material, CrystalTech is still liable as a distributor of defamatory material.

¶ 8 At common law, those who publicize another's libel may be treated: (1) as primary publishers (such as book or newspaper publishers); (2) as conduits (such as a telephone company); or (3) as distributors (such as a book store, library, or news dealer). Primary publishers are generally held to a standard of liability comparable to that of authors because they actively cooperate in publication. *See Prosser & Keeton on Torts* 810 (W. Page Keeton, ed., West Group 5th ed.1984); *see also* Restatement (Second) of Torts ("Restatement") § 581(1) cmt. c (1977). Conduits lack the ability to screen and control the information being communicated and are therefore ordinarily immune from liability. *See Lunney v. Prodigy Services Co.*, 94 N.Y.2d 242, 701 N.Y.S.2d 684, 723 N.E.2d 539, 542 (1999); *see also* Restatement § 581(1) cmt. f. Distributors are, however, subject to an intermediate standard of responsibility, and may be held liable as publishers if they know or have reason to know of the defamatory nature of the matter they disseminate. *See* Restatement § 581(1) cmts. d, e.

¶ 9 The internet, however, has challenged the conventional analysis, and courts have attempted to apply common law principles to the new medium. *See* Jay M. Zitter, Annotation, *Liability of Internet Service Provider for Internet or E–Mail Defamation*, 84 A.L.R. 5th 169 (2000). Congress intervened and enacted Title V of the Telecommunications Act of 1996, the CDA. Although its "primary goal ... was to control the exposure of minors to indecent material," *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir.2003), Congress wanted to "remove disincentives for the development and utilization of blocking and filtering technologies" and to encourage the development of technologies that allow users to control the information

---

**3.** Although the motion's caption indicated both CrystalTech and Daniels sought dismissal, the motion only addressed the claims against Daniels.

**4.** The superior court did not address Daniels' argument regarding lack of personal service.

they receive. 47 U.S.C. § 230(b)(3)-(4). To effectuate its goals, Congress chose to "override[ ] the traditional treatment of publishers, distributors, and speakers under statutory and common law." *Batzel*, 333 F.3d at 1026.

¶ 10 Section 230(c) of the CDA provides:

(1) Treatment of publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of—

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in [subparagraph (A)].

47 U.S.C. § 230(c). Thus, Congress sought to remove disincentives to self-regulation and "encourage service providers to self-regulate the dissemination of offensive material over their services" without fear they would incur liability as a result of their trouble. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir.1997).

¶ 11 Austin contends, however, that the immunity in § 230(c) is limited by the plain language of the statute to publishers, and does not apply to distributors. We disagree.

¶ 12 The Fourth Circuit Court of Appeals was the first appellate court to consider this issue, and concluded that Congress intended § 230(c) to immunize both publishers and distributors (as a subset of publishers) from liability for defamatory content provided by others. *Zeran*, 129 F.3d 327. Zeran

brought an action against America Online, Inc. ("AOL"), an interactive computer service provider, alleging that AOL had failed to timely remove defamatory messages posted by a third party. *Id.* at 328. Zeran argued that § 230 does not preclude liability for internet intermediaries who have notice of defamatory material posted through their services. *Id.* The Fourth Circuit ruled that § 230 "creates a federal immunity to any cause of action that would make [internet] service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role." *Id.* at 330. The court found that § 230 was enacted, in part, to "maintain the robust nature of internet communication" and limit government interference with the medium. *Id.; see also* 47 U.S.C. § 230(b)(1)-(2). The court determined that Congress had made a policy choice not to deter harmful online speech by imposing tort liability on internet intermediaries for third parties' potentially injurious speech. *Zeran*, 129 F.3d at 330–31.

¶ 13 Zeran argued, as Austin does now, that § 230 immunity eliminates only publisher, and not distributor, liability. *Id.* at 331. The court noted that everyone who takes part in a publication is considered to be a publisher and, accordingly, "distributors are considered to be publishers for purposes of defamation law." *Id.* at 332. The distinction between a publisher and a distributor "signifies only that different standards of liability may be applied *within* the larger publisher category, depending on the specific type of publisher concerned." *Id.*

¶ 14 The court determined that notice alone could not transform an original publisher into a distributor, stating, "once a computer service provider receives notice of a potentially defamatory posting, it is thrust into the role of a traditional publisher," and must decide whether to publish, edit, or withdraw the material. *Id.* The court concluded that were it to adopt Zeran's proposed interpretation of § 230, it would lead to the incongruous result of imposing liability on AOL for "assuming the role for which § 230 specifically proscribes liability—the publisher role."

*Id.* at 332–33. The court found that Congress had spoken directly to the issue by "employing the legally significant term 'publisher,' which has traditionally encompassed distributors and original publishers alike." *Id.* at 334. The court held that distributor liability is a subset of publisher liability and therefore specifically foreclosed by § 230. *Id.* at 332.[5]

¶ 15 The Fourth Circuit's approach has been followed in two other circuits. *See Green v. Am. Online,* 318 F.3d 465 (3d Cir. 2003) (holding that § 230 barred a tort action against AOL for its failure to remove allegedly defamatory material (erroneous stock information) from its network); *Ben Ezra, Weinstein & Co., Inc. v. Am. Online, Inc.,* 206 F.3d 980 (10th Cir.2000) (holding that § 230 proscribed a defamation claim against AOL based on material created by a third party).[6] We have found no published opinions to the contrary, and find the interpretation of a federal statute by federal courts to be persuasive. *See First Nat'l Bank of Ariz. v. Carruth,* 116 Ariz. 482, 483, 569 P.2d 1380, 1381 (App.1977). Consequently, because the CDA provides immunity to interactive computer service providers, like CrystalTech, we affirm the trial court's grant of summary judgment against Austin.

## II. Personal Jurisdiction

¶ 16 Austin also challenges the superior court's determination that it did not have personal jurisdiction over Daniels.[7] We review the dismissal *de novo,* and view the facts in the light most favorable to the plaintiff. *A. Uberti & C. v. Leonardo,* 181 Ariz. 565, 566, 569, 892 P.2d 1354, 1355, 1358 (1995).

¶ 17 Arizona may exercise either general or specific personal jurisdiction over a non-resident defendant. "General jurisdiction subjects the defendant to suit on virtually any claim, '[e]ven when the cause of action does not arise out of or relate to the [defendant's] activities'" in Arizona. *Batton v. Tenn. Farmers Mut. Ins. Co.,* 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987) (quoting *Helicopteros Nacionales v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction applies only when the defendant has "substantial" or "continuous and systematic" contacts with Arizona. *Id.* (quoting *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868). Austin does not contend Arizona has general jurisdiction over Daniels; therefore, we only address whether specific jurisdiction applies. *See Uberti,* 181 Ariz. at 569, 892 P.2d at 1358.

¶ 18 Arizona courts exercise specific personal jurisdiction over a non-resident defendant to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *id.* Due process is satisfied if the following three requirements are met: (1) the defendant performed some act or consummated some transaction within Arizona by which he purposefully availed himself of the privilege of conducting activities in Arizona; (2) the claim arises out of or results from the defendant's Arizona-related activities; and (3) the exercise of jurisdiction would be reasonable. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir.1997) (citing *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995)); *Williams v. Lakeview Co.,* 199 Ariz. 1, 3, ¶ 7, 13 P.3d 280, 282 (2000).

¶ 19 Austin argues that Daniels purposefully availed himself of our laws by using the

5. Austin urges us to reject the *Zeran* analysis and instead follow *Barrett v. Rosenthal,* 9 Cal.Rptr.3d 142 (App.2004). The California Supreme Court granted review of *Barrett,* and as a result it was depublished pursuant to California Rule of Court 976(d)(1) ("Unless otherwise ordered ... an opinion is no longer considered published if the [California] Supreme Court grants review...."). As a result it may not be cited to this court and we will not consider it. *Fed. Deposit Ins. Corp. v. Adams,* 187 Ariz. 585, 593, 931 P.2d 1095, 1103 (App.1996). Austin also relies on *Grace v. eBay, Inc.,* 16 Cal.Rptr.3d 192 (App.2004), but it too has been depublished.

6. The Seventh Circuit Court of Appeals and Ninth Circuit Court of Appeals have not directly addressed distributor immunity but noted that every appellate court to reach the issue has followed the Fourth Circuit's approach in *Zeran. Doe v. GTE Corp.,* 347 F.3d 655, 659–60 (7th Cir.2003); *Batzel,* 333 F.3d at 1027 n. 10.

7. For purposes of our personal jurisdiction analysis, we treat Daniels and Bali Discovery Tours as one entity and refer to them collectively as "Daniels."

website hosting services of CrystalTech. Daniels contends that he should not be haled into Arizona solely as a result of random, fortuitous, or attenuated contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

¶ 20 In this case, in addition to determining whether Daniels had minimum contacts with Arizona,

> we must consider whether it is reasonable to subject [Daniels] to Arizona jurisdiction. This requires us to weigh several factors: [Daniel's] burden of transoceanic litigation, Arizona's interest in resolving this [defamation] action, [Austin's] interest in obtaining relief in Arizona, and another nation's procedural and substantive interests in Arizona's exercise of jurisdiction.

*Uberti*, 181 Ariz. at 575, 892 P.2d at 1364 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

¶ 21 We will assume, without deciding, that Daniels purposefully availed himself of our laws by contracting with CrystalTech and sending the offending article to Arizona for publication on the website, and that this claim arises out of those contacts. We then turn to whether exercising personal jurisdiction over Daniels would be reasonable.

¶ 22 The Supreme Court's decision in *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) guides our analysis. There, Asahi, a Japanese corporation, manufactured tire valve assemblies and sold them to a Taiwanese company for use as components in finished tire tubes. *Asahi*, 480 U.S. at 106, 107 S.Ct. 1026. The Taiwanese company sold the finished tire tubes in the United States, including California. *Id.* After a California driver injured by an allegedly defective tire tube sued the Taiwanese company, it filed a cross-complaint seeking indemnification from Asahi. *Id.* Asahi argued California "could not exert jurisdiction over it consistent with the Due Process Clause of the Fourteenth Amendment." *Id.*

¶ 23 In considering whether the California court could exercise jurisdiction over Asahi consistent with the Due Process Clause, the Supreme Court noted the burden Asahi would face in defending itself in a foreign legal system. *Id.* at 114, 107 S.Ct. 1026. The Court also stated that because the third-party plaintiff [the Taiwanese company] was not a California resident, California's legitimate interests in the dispute diminished considerably. *Id.* It held that the exercise of jurisdiction would be unreasonable and unfair in light of the "serious burdens on [the] alien defendant [which were] outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 115–16, 107 S.Ct. 1026.

¶ 24 Applying the *Asahi* analysis, we find that it would be unreasonable for Arizona to exercise jurisdiction over this internet defamation case. First, neither Daniels nor Austin are Arizona residents, and neither lives here. Second, Arizona has no real interest in resolving a dispute between two Bali travel-related competitors. Third, Austin does not dispute Daniels' claim that Bali law governs the dispute; and Arizona has no interest in the substantive law of Indonesia. Consequently, because Arizona has no specific interest in the alleged wrongful conduct or the alleged harm to a British citizen that would compel an Arizona court to protect Austin's interests, personal jurisdiction over Daniels would be unreasonable.

### III. Attorneys' Fees on Appeal

¶ 25 CrystalTech and Daniels request an award of attorneys' fees and costs on appeal pursuant to A.R.S. § 12–349 (2003). Because Austin's position on appeal was not unreasonable, groundless, or made in bad faith, we decline to award them fees. However, we grant their request for costs pursuant to A.R.S. § 12–342(A) (2003) upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

¶ 26 For the foregoing reasons, we affirm the superior court's judgment in favor of CrystalTech and dismissal of Austin's claims against Daniels.

CONCURRING: PATRICK IRVINE, Presiding Judge and JOHN C. GEMMILL, Judge.

