NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

CHRIS HENDERSON, a married person dealing with his sole and separate property; PETER STEVENSON, a married person dealing with his sole and separate property, *Plaintiffs/Appellants*,

*v.*

ISAACMAN KAUFMAN & PAINTER, P.C., a California professional corporation, *Defendant/Appellee*.

No. 1 CA-CV 14-0045
FILED 5-12-2015

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2013-000639
The Honorable Douglas Gerlach, Judge

**AFFIRMED**

———————————————

COUNSEL

Ridenour, Hienton & Lewis, P.L.L.C, Phoenix
By Patricia A. Premeau
*Counsel for Plaintiffs/Appellants*

Gallagher & Kennedy, P.A., Phoenix
By Donald B. Petrie, Cober Plucker
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

---

**G E M M I L L**, Judge:

¶1 Appellants Chris Henderson and Peter Stevenson appeal the trial court's dismissal of their malpractice claims against California law firm Isaacman, Kaufman, and Painter, P.C. ("IKP"). For the following reasons, we affirm the trial court's grant of the motion to dismiss for lack of personal jurisdiction.

**BACKGROUND**

¶2 Henderson and Stevenson, non-Arizona residents, were joint investors in a piece of property located in Maricopa County. In 2005, the two sold the land to Estates at Spur Crossing, LLC, an Arizona limited liability company. The two hired Brian Kaufman, a lawyer from IKP, to represent them in the 2005 sale.[1] Kaufman was a California-licensed lawyer and managing partner of IKP, a California law firm. Neither Kaufman nor IKP had any other contacts in Arizona and neither practiced law here. At the time of the sale and all other transactions relevant to this appeal, Henderson was a resident of California and Stevenson was a resident of Illinois.[2]

¶3 Estates at Spur Crossing purchased the property for $1.2 million with $250,000 paid at close. It secured the remaining $950,000 with a note and deed of trust. The note was due to be paid in full on or before June 15, 2006.

¶4 Plaintiff's claims arise from a second transaction involving the property. In May 2006, Estates at Spur Crossing sold two 13.3 acre parcels; one to Keith Vertes and the other to Scott Mead. Vertes and Mead both purchased these parcels via warranty deed for $1.3 million, more than the

---

[1] Mr. Kaufman passed away before the initial lawsuit was filed in 2013.

[2] Henderson currently resides in Tennessee, and Stevenson still resides in Illinois.

original sale price. Pursuant to this sale, Estates at Spur Crossing obtained two deeds of trust from Vertes and Mead for $1.2 million each. In addition, Vertes and Mead executed two separate notes in favor of Henderson and Stevenson, each in the amount of $246,708.

¶5 The crux of the dispute arose on or about May 9, 2006, when the Arizona real estate agent handling the Vertes and Mead sales emailed IKP and Henderson requesting that Henderson and Stevenson execute a subordination agreement. This agreement would give the deeds of trust held by Vertes' and Mead's third-party lender priority over the notes held by Henderson and Stevenson. Henderson and Stevenson agreed, and the subordination agreement was recorded on May 16, 2006.

¶6 After the sales and execution of the subordination agreement by Henderson and Stevenson, Vertes and Mead defaulted on their respective deeds of trust. Neither paid the $246,708 due to Henderson and Stevenson by the required dates. Upon IKP's legal advice, Henderson and Stevenson entered into subsequent modifications of the notes. Despite these modifications, Vertes and Mead were still unable to pay the amounts due, and upon default, the properties became subject to trustee's sales. Upon credit bids, both parcels were returned to the beneficiaries under the $1.2 million deeds of trust. Because there were no excess proceeds, and as a result of the 2006 subordination agreements, Henderson and Stevenson were unable to collect on their notes.

¶7 Henderson and Stevenson allege that IKP was professionally negligent in failing to advise them of the ramifications of signing the subordination agreement. They claim that IKP failed to inform them of the relevant facts surrounding the second sale of the property and they would not have executed the agreements had they been made adequately aware of the circumstances. In January 2013, they filed a complaint in Maricopa County Superior Court against IKP alleging legal malpractice and breach of fiduciary duty.

¶8 In response to Henderson and Stevenson's complaint, IKP filed a motion to dismiss for lack of personal jurisdiction. The Superior Court granted the motion, noting that IKP had no representative in Arizona and had not transacted business or given advice to parties in this state. Additionally, the court explained that the alleged tort was not committed in Arizona nor was any alleged damage felt in Arizona. In a ruling filed November 13, 2013, it dismissed the claims against IKP for lack of personal jurisdiction. Henderson and Stevenson timely appeal.

**ANALYSIS**

## I. Basis for Personal Jurisdiction

¶9 The main argument on appeal is that the trial court erred when it held that Arizona does not have sufficient grounds to exercise specific personal jurisdiction over IKP.[3] Henderson and Stevenson argue that IKP's actions constituted purposeful conduct directed at Arizona, thereby giving the state specific jurisdiction over IKP. When no evidentiary hearing is conducted on the issue, this court reviews de novo a trial court's grant of a motion to dismiss for lack of jurisdiction. *Planning Grp. of Scottsdale, LLC v. Lake Mathews Mineral Properties, Ltd.*, 226 Ariz. 262, 264, ¶ 2, n.1, 246 P.3d 343, 345, n.1 (2011).

¶10 Arizona courts may exercise long-arm personal jurisdiction over a non-resident defendant to the fullest extent allowed by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a). Accordingly, the jurisdictional issue "hinges on federal law." *A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995). In determining whether an Arizona court may exercise personal jurisdiction, the analysis should focus on the relationship between the defendant, the state, and the claim. *Williams v. Lakeview Co.*, 199 Ariz. 1, 6, ¶ 17, 13 P.3d 280, 285 (2000). Whether an Arizona court may exercise personal jurisdiction over a non-resident defendant is a question that cannot be answered by the application of a "mechanical test" or formula. *Id.* at 3–4, ¶ 8, 13 P.3d at 282-83. Rather, it requires a fact-intensive inquiry to determine whether exercising jurisdiction would satisfy Due Process by comporting with traditional notions of "fair play and substantial justice." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86 (1985)).

¶11 Specific jurisdiction over an out-of-state defendant is appropriate when that defendant has "minimum contacts" with the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Minimum contacts exist when three requirements are met: (1) the defendant has purposefully availed itself of the privilege of conducting business in Arizona; (2) the claim arises out of the defendant's activities in Arizona; and (3) it is reasonable for the forum state to exercise jurisdiction over the defendant. *Austin v. CrystalTech Web Hosting*, 211 Ariz. 569, 574, ¶ 18, 125 P.3d 389, 394 (App. 2005). Our decision here rests on the first

---

[3] Plaintiffs concede that there are not sufficient "continuous and systematic" contacts to support general jurisdiction over IKP. *See Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416 (1984).

requirement, and we conclude that IKP did not purposefully avail itself of Arizona as a legal forum.

¶12 Based on its interpretation of federal case law, our supreme court articulated the applicable test for evaluating purposeful availment: "Considering all of the contacts between the defendants and the forum state, did those defendants engage in purposeful conduct for which they could reasonably expect to be haled into that state's courts with respect to that conduct?" *Planning Grp.*, 226 Ariz. at 268, ¶ 25, 246 P.3d at 349.

¶13 In *Planning Group*, a California limited partnership ("LMMP") sought investment capital for a new mining operation from an Arizona limited liability company ("TPG"). 226 Ariz. at 264, ¶ 2, 246 P.3d at 345. In order to solicit TPG's investment, LMMP sent numerous letters, emails, and faxes to TPG, in addition to participating in several telephone calls with TPG representatives located in Arizona. *Id.* at 268–69, ¶ 28, 249 P.3d at 349–50. Although LMMP did not have a physical presence in Arizona, LMMP representatives were directed to deliver reports and other communications to TPG at its Arizona location. *Id.* at 269, ¶ 30–31, 249 P.3d at 350. The court found that, viewed in totality, these actions constituted purposeful direction into Arizona's specific jurisdiction. *Id.*

¶14 In contrast, the court found that Integrated Resources, a second company involved in the negotiations between LMMP and TPG, had not purposefully directed its dealings into Arizona. *Id.* at 271, ¶ 40, 246 P.3d at 352. Integrated Resources specialized in mining operations and prepared a report outlining the specifics of the investment project. *Id.* Although Integrated Resources was a stakeholder in the project and would profit from TPG's investment, the court found that the company had not purposefully availed itself of Arizona's jurisdiction. The court explained that it is "not enough that a defendant know that he is dealing with an Arizona resident then located in another state; the requisite activity must instead be purposefully directed at the forum." *Id.* The act of preparing and circulating the report, without knowledge that it would be circulated in Arizona, was not sufficient to give Arizona specific jurisdiction over Integrated Resources.

¶15 Federal courts have reached similar conclusions when determining whether a party has purposefully availed itself of a particular state. The Ninth Circuit in *Sher v. Johnson* explained that "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote

business within the forum state." 911 F.2d 1357, 1363 (9th Cir. 1990). In that case, a Florida firm represented a California resident charged with a crime in Florida. The firm accepted payment from a California bank, communicated telephonically and through the mail with parties in California, and made trips to California to meet with the client in person. *Id.* at 1362–63.

¶16            When the client later sued the firm for malpractice in California, the Ninth Circuit held that the firm's California activities were "incident to the Florida representation" and not enough to create a "substantial connection" with California because the firm did not promote its business there. *Id.* Nonetheless, California had specific jurisdiction because the Florida firm required the clients to execute a deed of trust secured by their California home as security for payment. *Id.* at 1363. The court held that the deed of trust, combined with the additional California dealings, represented a "significant contact with California."

¶17            IKP is more akin to Integrated Resources than to LMMP. It is true that IKP knowingly communicated with Arizona parties, including legal representatives of Vertes and Mead, relating to the second sale of the property. But IKP did not make these communications in order to "purposefully avail itself of the privilege of conducting activities" in Arizona. *Burger King*, 471 U.S. at 475. Instead, any communication it directed to this state regarding the second sale of the property was incidental to the unilateral activity of Henderson and Stevenson—activity that did not take place in Arizona. *See Planning Grp.*, 226 Ariz. at 266, ¶ 16, 246 P.3d at 347 (explaining that the unilateral activity of the plaintiff in a state cannot create personal jurisdiction over the defendant in that state).

¶18            Henderson and Stevenson rely on *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 306 P.3d 71 (App. 2013) to argue that directing communication into the forum state is enough to establish specific jurisdiction. Importantly, the client in *Beverage* was an Arizona resident. All communication directed to that client was therefore necessarily targeted at Arizona. The claims here, on the other hand, are brought by California and Illinois residents who solicited the assistance of a California firm to advise them regarding an Arizona-based investment opportunity. Unlike the law firm in *Sher*, IKP did not solicit or promote business in Arizona in relation to the second sale of the property. The Arizona contacts it made pursuant to that sale were incidental to its representation of non-Arizona clients. IKP's relationship with Arizona therefore falls short of the "continuing relationships and obligations" sufficient to support specific

personal jurisdiction.  *See Beverage*, 232 Ariz. at 419, ¶ 17, 306 P.3d at 76 (citing *Burger King*, 471 U.S. at 487).[4]

**¶19**　　　　IKP did not purposefully direct business into Arizona. Because there was no purposeful availment, Arizona cannot exercise personal jurisdiction over IKP.  The trial court did not err when it granted the motion to dismiss for lack of personal jurisdiction.

## II.　　Denial of Evidentiary Hearing

**¶20**　　　　Henderson and Stevenson also argue that the court abused its discretion in deciding the issue of whether it had jurisdiction over IKP without conducting an evidentiary hearing to determine the full extent of IKP's contacts with Arizona.  We review a trial court's refusal to grant an evidentiary hearing for an abuse of discretion.  *Pioneer Fed. Sav. Bank v. Driver*, 166 Ariz. 585, 589, 804 P.2d 118, 122 (App. 1990) (reviewing denial of request for evidentiary hearing for abuse of discretion); *see also Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007) (explaining that the trial court has substantial discretion to deny discovery in jurisdictional disputes).

**¶21**　　　　We find no abuse of discretion here.  First, Henderson and Stevenson have not made an offer of proof describing the additional facts they expect to uncover with an evidentiary hearing.  *See, e.g.*, *Curtis v. Richardson*, 212 Ariz. 308, 311, ¶ 12, 131 P.3d 480, 483 (App. 2006) (affirming denial of an evidentiary hearing when movant "failed to provide specifics regarding the substance of proposed testimony").  Second, based on the record before it when it granted the motion to dismiss, the trial court had sufficient information to conclude that the communications IKP directed into Arizona did not constitute purposeful availment of Arizona as a legal forum.  Accordingly, the trial court did not abuse its discretion in deciding the motion to dismiss without conducting an additional evidentiary hearing.

---

[4] Henderson and Stevenson also argue that based on defendants' failure to advise them against the subordination agreement, IKP and Kaufman should have been aware that Henderson and Stevenson may be forced to litigate claims relating to the realty in Arizona courts.  But foreseeability that a claim may arise in the forum state is not sufficient to give that state specific jurisdiction over a client. *Williams v. Lakeview Co.*, 199 Ariz. 1, 6, ¶ 15, 13 P.3d 280, 285 (2000).

## CONCLUSION

**¶22**        Because Arizona does not have personal jurisdiction over IKP, we affirm the trial court's dismissal.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama