IN THE COURT OF APPEALS
STATE OF ARIZONA

FILED BY CLERK

APR 24 2012

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| SUSIE VAN HEESWYK, an individual and resident of Pima County, Arizona; KRISTEN VAN HEESWYK, an individual and resident of Clark County, Nevada; and VICTORIA VAN HEESWYK, an individual and resident of Boulder County, Colorado, | ) ) ) ) ) ) | 2 CA-CV 2011-0107 DEPARTMENT B |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| JABIRU AIRCRAFT PTY., LTD., an Australian limited company, | ) ) ) | |
| Defendant/Appellee. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20104187

Honorable Scott Rash, Judge

REVERSED AND REMANDED

Sanders & Parks, P.C.
  By Brett M. Hager and Shanks Leonhardt                                    Phoenix
                                              Attorneys for Plaintiffs/Appellants

Smithamundsen, LLC
  By Alan L. Farkas                                                        Chicago, IL

    and

CKGH Law, P.C.
  By Christian K. G. Henrichsen                                Phoenix
                                       Attorneys for Defendant/Appellee

---

V Á S Q U E Z, Presiding Judge.

**¶1**        In this wrongful death action, Susie Van Heeswyk, Kristen Van Heeswyk, and Victoria Van Heeswyk (collectively "the Van Heeswyks") appeal from the trial court's order dismissing their complaint against Jabiru Aircraft Pty., Ltd. (hereinafter "Jabiru") for damages arising from the death of Gerard Van Heeswyk ("Gerard" or "decedent"). On appeal, the Van Heeswyks argue the court erred in finding it lacked personal jurisdiction over Jabiru. For the reasons set forth below, we reverse and remand for further proceedings consistent with this opinion.

### Factual and Procedural Background

**¶2**        We view the facts in the light most favorable to the Van Heeswyks. *See A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 566, 892 P.2d 1354, 1355 (1995). On June 1, 2008, Gerard was killed when the airplane he was piloting crashed in Marana, Arizona. He had assembled the Arion Lightning aircraft from a kit sold by Jabiru's distributor, Jabiru USA Sport Aircraft, LLC, located in Tennessee ("Jabiru USA"). Gerard purchased the kit, which included a Jabiru 3300 engine, through Greg Hobbs, a retailer located in Arizona and an agent for Arion aircraft. Gerard built the aircraft in Hobbs's hanger located in Marana and completed construction in December 2007. After an inspection and a successful "maiden flight" by a test-pilot-for-hire, Gerard flew the aircraft uneventfully for several hours between February 28 and May 19, 2008.

2

However, while Gerard was flying the aircraft on June 1, the propeller assembly detached and the plane crashed. Gerard died at the scene.

¶3        Gerard's wife and personal representative of his estate, Susie Van Heeswyk, and his daughters, Kristen and Victoria Van Heeswyk, filed this action alleging claims for strict products liability, negligence, misrepresentation of chattels, failure to warn, breach of warranty, and breach of implied warranty. The complaint named the following defendants: Jabiru, an Australian limited liability company or limited partnership; Sensenich Propeller Manufacturing Co., Inc., a Pennsylvania corporation; and Greg Hobbs and Jane Doe Hobbs, husband and wife, residents of Pinal County.[1]

¶4        Jabiru has no offices or employees in Arizona and does not directly sell its products to retail customers anywhere in the United States. It does, however, have three North American distributors that sell its products throughout the United States: Jabiru USA, located in Tennessee; Jabiru Pacific, LLC, located in California ("Jabiru Pacific"); and Suncoast Sportplanes, Inc., located in Florida ("Suncoast"). Between 2004 and 2006, Jabiru USA and Jabiru Pacific sold a combined total of 116 Jabiru products in Arizona, the majority of which were sold in 2006—the year Gerard purchased the Jabiru engine that is the subject of this action.

¶5        After hearing oral argument on Jabiru's motion to dismiss, the trial court concluded the Van Heeswyks had failed to meet their burden of establishing a prima facie

---

[1]This appeal only concerns Jabiru, who moved to dismiss the complaint pursuant to Rule 12(b)(2), Ariz. R. Civ. P., for lack of personal jurisdiction. After the trial court granted Jabiru's motion, the Van Heeswyks moved to stay the claims against the remaining defendants pending resolution of this appeal. The trial court granted that request.

3

case for personal jurisdiction. The court nonetheless granted them sixty days to conduct limited discovery focusing on "the relationship between the independent distributors and Jabiru Australia," and the volume of sales of Jabiru products in Arizona during the relevant time period. The parties subsequently filed supplemental briefs and again argued the jurisdictional issue to the court. In an under-advisement ruling, the court granted Jabiru's request to dismiss the Van Heeswyks' complaint and entered a final order pursuant to Rule 54(b), Ariz. R. Civ. P. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Discussion**

¶6 The Van Heeswyks argue Jabiru has sufficient "minimum contacts with Arizona necessary to support personal jurisdiction," thus the trial court erred by granting Jabiru's Rule 12(b)(2), Ariz. R. Civ. P., motion to dismiss. "We review de novo a dismissal for lack of in personam jurisdiction and 'simply look to the non-moving party to make a prima facie showing of jurisdiction.'" *Uberti*, 181 Ariz. at 569, 892 P.2d at 1358, *quoting Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir. 1994). The plaintiff cannot meet this burden with bare allegations but must come forward with facts, established by affidavit or otherwise, supporting jurisdiction. *Macpherson v. Taglione*, 158 Ariz. 309, 311-12, 762 P.2d 596, 598-99 (App. 1988). Once the plaintiff makes a prima facie showing, the defendant then has the burden of rebuttal. *Id.* at 312, 762 P.2d at 599.

¶7 "Arizona courts may exercise personal jurisdiction to the maximum extent allowed by the United States Constitution." *Planning Grp. of Scottsdale, L.L.C. v. Lake*

4

*Mathews Mineral Props., Ltd.*, 226 Ariz. 262, ¶ 12, 246 P.3d 343, 346 (2011); *see also* Ariz. R. Civ. P. 4.2(a). The question of personal jurisdiction, therefore, "hinges on federal law." *Uberti*, 181 Ariz. at 569, 892 P.2d at 1358. The Due Process Clause of the Fourteenth Amendment protects a defendant from "the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985), *quoting Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945). Due process thus requires that before a state court exerts jurisdiction over a nonresident defendant, it must first be shown the defendant has minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316, *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

¶8     Personal jurisdiction is described as being either "general" or "specific." *Williams v. Lakeview Co.*, 199 Ariz. 1, ¶ 6, 13 P.3d 280, 282 (2000). "[A] state may exercise general jurisdiction . . . over its own citizens, . . . and over nonresident corporations whose activities in the state are 'systematic and continuous,'" even if the suit's subject matter is wholly unrelated to the forum. *Planning Grp.*, 226 Ariz. 262, ¶ 13, 246 P.3d at 346, *quoting Int'l Shoe*, 326 U.S. at 320. Specific jurisdiction, on the other hand, is "jurisdiction with respect to a particular claim," and requires "sufficient contacts" with the forum such that it is "reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought

5

there." *Planning Grp.*, 226 Ariz. 262, ¶¶ 13-14, 246 P.3d at 346-47, *quoting Int'l Shoe*, 326 U.S. at 317.

¶9 Our supreme court has adopted a "holistic approach" for determining whether personal jurisdiction exists. *Planning Grp.*, 226 Ariz. 262, ¶ 25, 246 P.3d at 349. Under this approach, we ask one question: "Considering all of the contacts between the defendant[] and the forum state, did th[e] defendant[] engage in purposeful conduct for which [it] could reasonably expect to be haled into that state's court with respect to that conduct?" *Id.* There is no mechanical formula, however, and "[t]he facts of each case must [always] be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Id.* ¶ 15. "[C]asual or accidental contacts by a defendant with the forum state, particularly those not directly related to the asserted cause of action, cannot sustain the exercise of specific jurisdiction." *Id.* ¶ 16. "Nor can the requisite contacts be established through the unilateral activities of the plaintiff." *Id.*

¶10 Here, the Van Heeswyks maintain they met their prima facie burden of establishing personal jurisdiction and the trial court "failed to properly apply binding precedent" in resolving the issue. Citing *Uberti*, 181 Ariz. at 572, 892 P.2d at 1361, they contend Jabiru is subject to specific jurisdiction in this state because it utilized its North American distributors "'to penetrate the American market'" and target Arizona customers. They point to steady and consistent sales of Jabiru products in this state and an exclusive distribution agreement between Jabiru and Jabiru Pacific requiring that both the distributor and manufacturer "use [their] best efforts to actively promote sales and service" of Jabiru products in Arizona. And as further evidence of Jabiru's minimum

6

contacts sufficient to subject it to personal jurisdiction in Arizona, the Van Heeswyks point to Jabiru's advertisements in Kitplanes magazine identifying its American distributors and their contact information.

¶11        In response, Jabiru argues the case was properly dismissed because "[t]here is no basis" to impute the conduct of its distributors to it, and "[t]here is no nexus between the claims asserted against Jabiru . . . and any alleged contacts with Arizona." Jabiru insists that, as to the particular Jabiru 3300 engine purchased by the decedent, Jabiru's "commercial transaction was complete" when it shipped the engine to its distributor, Jabiru USA, and it never "had any reason to expect" the engine would end up in Arizona and never "did anything to cause" the engine to enter the state. With respect to the advertisement in Kitplanes magazine, Jabiru contends the Van Heeswyks failed to offer proof that the magazine was sold in Arizona or that the decedent ever saw the advertisement.[2]    Jabiru thus contends the advertisement "plays no role" in the jurisdictional question.

¶12        To the extent Jabiru argues it is not subject to specific jurisdiction in Arizona because it utilized intermediaries to distribute its products here, we disagree. This broad proposition was rejected by our supreme court in *Uberti*. There, the court addressed the question of whether Arizona had personal jurisdiction over an Italian

---

[2]The agreements between Jabiru and its distributors provided as follows: "Manufacturer will make a contribution equivalent to [a] 1/6 page ad in Kitplanes on [a] monthly basis for the first three [Distributorship] Terms. Said ad will include all USA [Distributors] by name and include contact information." Although Jabiru correctly contends there is nothing in the record to suggest Gerard ever saw Jabiru's advertisements, all of a defendant's contacts with the forum are relevant to the issue of personal jurisdiction. *See Planning Grp.*, 226 Ariz. 262, ¶ 25, 246 P.3d at 349.

handgun manufacturer when one of its revolvers, sold to an Arizona resident, accidently discharged and killed a two-year old in Tucson. *Uberti*, 181 Ariz. at 566, 892 P.2d at 1355. The gun manufacturer argued jurisdiction was improper because it had utilized an independent American distributor, and, although it may have foreseen that the revolver would "find its way" to Arizona, mere foreseeability was insufficient to establish jurisdiction. *Id.* at 570-71, 892 P.2d at 1359-60.

¶13        In rejecting the defendant's argument, the court noted "the record show[ed] a great deal more than the mere foreseeability that in today's world any product—like this Italian weapon—may end up anywhere." *Id.* at 571, 892 P.2d at 1360. The court stated that the defendant's firearms were exported to the United States "*by direction rather than chance*" and not as "an isolated transaction" but "as part of a stream of Defendant's products designed and directed for export to America." *Id*. at 572, 892 P.2d at 1361. Based upon these facts, the court also rejected the defendant's argument that the plaintiffs had to show an additional "specific intent to market the gun in Arizona," reasoning such a conclusion "defies any sensible concept of due process." *Id.* at 573, 892 P.2d at 1362. The court went on to say:

> We do not believe that a foreign manufacturer that knowingly and intentionally distributes its products in America through an American company can avoid jurisdiction of American courts by the simple expedient of closings its eyes and making no effort to learn about or restrict its distributor's activities.

*Id.* at 573-74, 892 P.2d at 1362-63.

¶14 We believe the same principles apply here and reject the notion that Jabiru can "close its eyes" and plead ignorance to its products being sold in Arizona as a means of avoiding personal jurisdiction.[3] Jabiru's products entered the United States market exclusively through its North American distributors, including Jabiru Pacific, which at least until the distribution agreement's term expired in 2003, was required to utilize its best efforts to sell Jabiru products in Arizona. *See id.* at 571, 892 P.2d at 1360 (relevant inquiry: defendant's contacts up to point in time when product in question entered market). Moreover, the agreement provided that Jabiru, as manufacturer, also would "use its best efforts to promote sales and service of Products in the Territory and cooperate with [the Distributor] to that end." Nothing in the record suggests that Jabiru restricted the sale of its products in Arizona after the term of the Jabiru Pacific distribution agreement had expired.

¶15 Indeed, in 2006 alone—the year Gerard purchased the Jabiru 3300 engine—Jabiru's distributors sold at least sixty-one Jabiru products in Arizona, including five engines. While these sales may have accounted for only one to two percent of Jabiru sales nationally, they amount to the "minimum contacts" necessary to satisfy the Due

---

[3]We also agree with the Van Heeswyks that, to the extent the trial court believed this court's decision in *Rollin v. William V. Frankel & Co., Inc.*, 196 Ariz. 350, 996 P.2d 1254 (App. 2000), modified *Uberti* or limited its scope, it was mistaken. This court, as an intermediate appellate court, has "no authority to overrule, modify, or disregard" the decisions of our supreme court. *City of Phx. v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App. 1993). In any case, we do not believe *Rollin* is necessarily inconsistent with *Uberti*, though we conclude the similarities between *Uberti* and the instant case make *Uberti* the much more persuasive precedent. *Cf. Planning Grp.*, 226 Ariz. 262, ¶ 15, 246 P.3d at 347 (recognizing need for case-by-case analysis because previous opinions "of less than definitive guidance").

Process Clause. As we have noted, there is nothing in the record to suggest Jabiru placed any restriction on the sale of its products within this state. To the contrary, Jabiru's products, including the engine purchased by the decedent, "reached [Arizona] deliberately, not fortuitously, as part of a stream of Defendant's products . . . directed for export to America" generally, and Arizona specifically. *Id.* at 572, 892 P.2d at 1361. And, we are unwilling to ignore the economic reality that Jabiru, as the manufacturer and, thus, the head of a distribution network, realizes the bulk of the economic benefit from its sales in "distant forums" such as Arizona. *See Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir. 1986).

¶16 As did our supreme court in *Uberti*, we decide this case understanding that due process requires personal jurisdiction be based on something more than the mere foreseeability that the defendant's products will reach a forum through the stream of commerce. 181 Ariz. at 570, 892 P.2d at 1359. It requires contacts between the defendant and the forum state "come about by *an action of the defendant purposefully directed toward the forum.*" *Id.*, quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 112. In other words, it is not enough to say it was "predictable" that the defendant's goods would reach the forum, rather, jurisdiction is proper "only where the defendant can be said to have targeted the forum." *J. McIntyre Mach., Ltd. v. Nicastro*, ___ U.S. ___, ____, 131 S. Ct. 2780, 2788 (2011).

¶17 In sum, we believe the Van Heeswyks have shown Jabiru's contacts with Arizona were not "casual or accidental," *Planning Grp.*, 226 Ariz. 262, ¶ 16, 246 P.3d at 347, but were the result of Jabiru's "purposeful direction of [marketing] activities toward

10

this state." *Id.* at ¶ 31, 246 P.3d at 350. Jabiru's distribution agreement with Jabiru Pacific is evidence of this purposeful direction. It shows Jabiru "targeted" Arizona as a market for its goods by requiring the distributor to utilize its "best efforts to actively promote sales" in the state. And even though, as Jabiru contends, the exclusive distribution agreement with Jabiru Pacific expired in 2003,[4] the sales data shows that both Jabiru Pacific and Jabiru USA sold products to Arizona residents in each of the years between 2004 and 2006 at a steady and increasing rate. The quantity and targeted nature of such sales are sufficient to support the exercise of specific jurisdiction over Jabiru for claims arising out of them.[5] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, ___, 131 S. Ct. 2846, 2855 (2011) ("Flow of a manufacturer's products into the

---

[4]The Van Heeswyks argue the trial court improperly resolved a disputed fact in favor of Jabiru when it found "[t]he dealership agreements expired pursuant to their terms in or around 2003." The court's finding apparently was based on an affidavit of Jabiru's business manager providing that all agreements with American-based distributors had expired and any continued business with American distributors was conducted "without the benefit of any agreement." The Van Heeswyks contend that, even if the agreements were not renewed in writing, the continued "course of dealing" between Jabiru and its distributors suggested the agreements were still in place. We agree that, whether or not the written dealership agreements were still in effect in 2006 when Gerard purchased his engine, the agreements provided evidence of Jabiru's purposeful conduct directed at this state, and that conduct continued and increased in the years after 2003 when the agreements purportedly had expired.

[5]The Van Heeswyks also maintain that even if Jabiru's own conduct is not sufficient to support jurisdiction, Jabiru's American distributors were its agents and, by making direct sales of products to Arizona, they bound Jabiru to personal jurisdiction here. We acknowledge the existence of an agency relationship bears upon the jurisdictional analysis, *see Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422-23 (9th Cir. 1977), but do not believe the Van Heeswyks must prove that Jabiru's distributors were its general agents to find jurisdiction proper in this case. *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 458 (10th Cir. 1996) (noting general agency relationship may be required for general jurisdiction, but "[t]he actions of an

11

forum . . . may bolster an affiliation germane to *specific* jurisdiction."); *Nicastro*, ___ U.S. at ___, 131 S. Ct. at 2792 (single isolated sale insufficient for jurisdiction over foreign manufacturer; no "regular . . . flow" or "regular course" of sales in New Jersey) (Breyer, J., concurring). As the Supreme Court stated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980):

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

¶18 Not only do we conclude Jabiru had sufficient minimum contacts with Arizona, we also conclude the Van Heeswyks' claim "arises out of" those contacts. *Williams*, 199 Ariz. 1, ¶ 7, 13 P.3d at 282. For purposes of this inquiry, "we must focus on the relationship between the defendant, the forum, and the litigation." *Id.* ¶ 11. Here, the trial court suggested that because the subject engine was ordered from Jabiru USA by Hobbs, an Arion Aircraft dealer, and shipped to him in Arizona, there was no nexus between Jabiru's contacts with Arizona and the Van Heeswyks' claim because it was the result of Hobbs's "unilateral act." But Hobbs apparently ordered the aircraft kit, which included the Jabiru 3300 engine, from Jabiru USA and had it shipped to Arizona at Gerard's request. In our view, the fact that Hobbs acted as an intermediary for this sale is not the type of "unilateral act" that would preclude the exercise of personal jurisdiction.

independent distributor may not insulate a foreign company from *specific* jurisdiction"). We therefore need not consider the parties' arguments in detail on this point.

*Cf. World-Wide Volkswagen*, 444 U.S. at 298-99 (no jurisdiction over automobile dealer and wholesale distributor based only on plaintiff's foreseeable act of driving car from New York to Oklahoma); *N. Propane Gas Co. v. Kipps*, 127 Ariz. 522, 526-27, 622 P.2d 469, 473-74 (1980) (no jurisdiction over propane gas company that conducted no business in Arizona even though employee who filled propane tank in Michigan knew customer was driving to Arizona).

**¶19** Jabiru also maintained at oral argument the required nexus is lacking because the particular engine purchased by the decedent was sold by Jabiru USA rather than Jabiru Pacific—the distributor that once claimed Arizona as its exclusive territory. This argument may have had some traction if, during the relevant time period, only Jabiru Pacific had been authorized to serve the Arizona market. However, the Van Heeswyks submitted invoices establishing that both distributors made a significant number of sales to Arizona residents during that timeframe.[6] Under such circumstances, we see no reason to limit our consideration to Jabiru Pacific's forum-related activities. *See Planning Grp.*, 226 Ariz. 262, ¶ 25, 246 P.3d at 349. And, because we already have concluded Jabiru targeted Arizona customers through its distributors, we see nothing about this particular sale that was "random [or] fortuitous." *Williams*, 199 Ariz. 1, ¶ 11, 13 P.3d at 283. Under either the "but for" or "proximate cause" test for determining whether a sufficient

---

[6]Moreover, the distribution agreements provided that "[Distributor] shall provide to its customers service, parts and warranty work . . . in its Territory regardless of what dealer sold the Product." And while Jabiru contends the agreements since have expired, when asked at oral argument what had changed since that time, Jabiru's only response was that the record was silent on that point.

nexus exists, we are satisfied the Van Heeswyks' claim arises out of Jabiru's purposeful marketing activities in Arizona. *Id.* ¶ 12.

¶20 Finally, we also must determine whether the exercise of jurisdiction is reasonable. The reasonableness inquiry primarily focuses on the defendant's burden in litigating the case in the forum, but "will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief . . . [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies," among others. *World-Wide Volkswagen*, 444 U.S. at 292 (internal citations omitted).

¶21 In its motion to dismiss, Jabiru acknowledged it would be subject to personal jurisdiction in Tennessee and "waive[d] the statute of limitations defense that may be available." And at oral argument on the Van Heeswyks' motion for reconsideration, Jabiru argued that as a foreign corporation it "does business based on expectations" and Tennessee is the better forum because it "ha[s] a reasonable expectation" of being sued where its distributors are located. In its ruling granting Jabiru's motion to dismiss, the trial court stated:

> Jabiru fails to explain why Tennessee is a less burdensome forum than Arizona for an Australian company to mount a defense. Litigation in Tennessee makes little sense given Arizona's strong interest in remedying harm to its citizens. The injury originated in Arizona, the majority of witnesses and evidence are located in Arizona, the plane was constructed and tested in Arizona, and Arizona law would likely apply, even if the case is litigated in Tennessee. To the contrary, Tennessee has little interest in litigating a case between an Australian corporation and Arizona residents.

14

> Thus, if Arizona has the requisite minimum contacts to assert jurisdiction, Arizona is the better forum.

We agree with the court's reasoning. And, even if Jabiru's contacts with Tennessee "predominate" over its contacts with Arizona, "personal jurisdiction is not a zero-sum game; a defendant may have the requisite minimum contacts allowing the exercise of personal jurisdiction by the courts of more than one state with respect to a particular claim." *Planning Grp.*, 226 Ariz. 262, ¶ 27, 246 P.3d at 349. Because Jabiru has sufficient minimum contacts with Arizona, and the Van Heeswyks' claims arise from those contacts, we conclude the trial court erred by dismissing the complaint.

**Disposition**

¶22        For the reasons set forth above, the trial court's order dismissing the Van Heeswyks' complaint is reversed and the case is remanded to the court for further proceedings consistent with this opinion.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

15