395 P.3d 734

IN RE the MARRIAGE OF John William PECK, Petitioner/Appellant,

and

Sabine Sybille Hansen Peck, Respondent/Appellee.

No. 2 CA–CV 2016–0131–FC

Court of Appeals of Arizona, Division 2.

Filed April 20, 2017

346

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C., Tucson, By Peter Economidis and Corey B. Larson, Counsel for Petitioner/Appellant

Garnice Law, PLLC, Scottsdale, By Victor A. Garnice, Counsel for Respondent/Appellee

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Staring and Judge Miller concurred.

## OPINION

ESPINOSA, Judge:

¶1 John Peck appeals the trial court's judgment dismissing his petition for dissolution on grounds of lack of personal jurisdiction over his wife, Sabine Peck. He also contends that, even if jurisdiction was lacking, he was nonetheless "entitled to have an Arizona court terminate his marriage." For the following reasons, we affirm the conclusion that the court did not have jurisdiction over Sabine,[1] but we remand for further proceedings regarding the dissolution of the marriage.

### Factual and Procedural Background

¶2 In reviewing the trial court's dismissal for lack of personal jurisdiction, we view the facts in the light most favorable to John. *See In re Consol. Zicam Prod. Liab. Cases*, 212 Ariz. 85, ¶7, 127 P.3d 903, 907 (App. 2006).[2] The salient facts in this case are essentially undisputed. John and Sabine were married in Switzerland in 2001. Sabine is a German citizen who resides and is employed in Spain, and John resides in Tucson. Throughout their marriage, the couple have lived separately and apart in Switzerland, England, and Spain. In June 2014, John moved to Tucson while Sabine remained in Spain. Sabine has never resided in Arizona, but she visited John in Tucson on several occasions throughout 2014 and 2015 "in an effort to reconcile their marriage" and co-signed the lease on his Tucson apartment.

¶3 In January 2016, John filed a petition for dissolution of marriage without minor children in the Pima County Superior Court, alleging the trial court had personal jurisdiction over the parties because he was "a resident of and domiciled in Pima County," "Arizona [wa]s the last matrimonial domicile of the parties[,] and [Sabine] has caused numerous events to occur in Arizona including execution of a Contract for Home Rental." Sabine was served with the petition in Spain pursuant to Ariz. R. Fam. Law P. 42(A) and in compliance with the Hague Convention.

¶4 Sabine filed a motion to dismiss for lack of personal jurisdiction, arguing she had "not established domicile in Arizona" and lacked sufficient minimum contacts with Arizona to permit the exercise of in personam jurisdiction over her. John responded that personal jurisdiction over Sabine was appropriate because her "conduct ... caus[ed] [his] move to Arizona and her other conduct in Arizona," including making statements that she intended to move to Arizona and co-signing the lease on John's apartment, satisfied jurisdictional requirements.

¶5 In a signed written ruling, the trial court determined that Sabine did not have sufficient minimum contacts with Arizona to subject her to divorce proceedings in the state and dismissed the petition for lack of personal jurisdiction. John filed a motion for reconsideration, arguing he had established a prima facie case of jurisdiction over Sabine, and she had "not denied" the allegations in his opposition. From this conclusion, he asserted the court was required to accept his claims as true and exercise jurisdiction over Sabine. The court denied John's motion, he timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and 12–2101(A)(3). *See Garza v. Swift Transp. Co.*, 222 Ariz. 281, ¶¶15–16, 213 P.3d 1008, 1011 (2009) (section 12–2101(A)(3) provides

---

1. For convenience and to avoid confusion, we refer to the parties by their first names.

2. Although we view the facts in his favor, we reject John's argument that courts are "required to accept all well pleaded facts in the Petition, as well as all facts set forth in [his] Opposition and Affidavit." *See Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 506–07, 744 P.2d 29, 33–34 (App. 1987) (court may consider documentary and testimonial evidence to resolve jurisdictional challenges).

jurisdiction when non-final order precludes party from obtaining ultimate judgment).[3]

## Personal Jurisdiction

■ ¶ 6 In the context of proceedings for the dissolution of marriage, A.R.S. § 25–312 authorizes the superior court to make provision for child custody, child support, the maintenance of either spouse, and the disposition of property, "[t]o the extent it has jurisdiction to do so." It is against this backdrop that we consider whether the trial court had personal jurisdiction over Sabine. John argues the court erred in determining it lacked jurisdiction over Sabine because her purposeful acts "directed at Arizona" and her "breach of [their] contract" to relocate to Tucson provided sufficient contacts for the forum to assert its jurisdiction over her. "When a defendant challenges the existence of personal jurisdiction, the plaintiff must come forward with facts establishing a *prima facie* showing of jurisdiction, at which time the burden shifts to the defendant to rebut the showing." *Ariz. Tile, L.L.C. v. Berger,* 223 Ariz. 491, ¶ 8, 224 P.3d 988, 990 (App. 2010).

■ ¶ 7 A petitioner cannot establish a prima facie showing with bare allegations and must come forward with facts, established by affidavit or otherwise, supporting jurisdiction. *Van Heeswyk v. Jabiru Aircraft Pty., Ltd.,* 229 Ariz. 412, ¶ 6, 276 P.3d 46, 50 (App. 2012). Nonetheless, the court should resolve any conflicts "in the affidavits and pleadings" in the petitioner's favor. *Ariz. Tile,* 223 Ariz. 491, ¶ 8, 224 P.3d at 990, *quoting Macpherson v. Taglione,* 158 Ariz. 309, 312, 762 P.2d 596, 599 (App. 1988). We will not set aside any findings of fact made by the trial court in reaching its jurisdiction determination unless clearly erroneous, *see Bonner v. Minico, Inc.,* 159 Ariz. 246, 253–56, 766 P.2d 598, 605–06 (1988); *see also Bushelman v. Bushelman,* 246 Wis.2d 317, 629 N.W.2d 795, 803 (Wis. Ct. App. 2001), but we review de novo the court's dismissal of claims for lack of personal jurisdiction, *Van Heeswyk,* 229 Ariz. 412, ¶ 6, 276 P.3d at 50.

"Arizona courts may exercise personal jurisdiction to the maximum extent allowed by the United States Constitution." *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.,* 226 Ariz. 262, ¶ 12, 246 P.3d 343, 346 (2011). For personal jurisdiction over a non-resident to exist, the defendant must have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Williams v. Lakeview Co.,* 199 Ariz. 1, ¶ 6, 13 P.3d 280, 282 (2000); *see also Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ ¶ 8 Personal jurisdiction may be either general or specific and, under both forms, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Williams,* 199 Ariz. 1, ¶ 6, 13 P.3d at 282, *quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A non-resident defendant is subject to general jurisdiction when her contacts with the state are so substantial or continuous that she may be haled into court in the forum, even for claims unrelated to her contacts with the forum. *Id.* We consider only specific jurisdiction here because John concedes none of the traditional indicia of general jurisdiction are present.

■ ¶ 9 Specific jurisdiction may be exercised over non-resident defendants to the extent permitted by the Due Process Clause of the United States Constitution. *In re Consol. Zicam Prod.,* 212 Ariz. 85, ¶ 10, 127 P.3d at 908. Due process is satisfied if (1) the defendant purposefully availed herself of the privilege of conducting activities in Arizona; (2) the claim arises out of or results from the defendant's activities related to Arizona; and (3) the exercise of jurisdiction would be reasonable. *Id.* Although the personal jurisdiction inquiry is "holistic," it is also "case-by-case," and the existence of specific jurisdiction depends upon only those minimum contacts that are related to the cause of action.

---

**3.** *Garza* refers to A.R.S. § 12–2101(D), which was subsequently renumbered as § 12– 2101(A)(3). 2011 Ariz. Sess. Laws, ch. 304, § 1.

*Planning Grp.*, 226 Ariz. 262, ¶¶ 15–16, 25, 246 P.3d at 347, 349 ("[C]ontacts by a defendant with the forum state ... not directly related to the asserted cause of action ... cannot sustain the exercise of specific jurisdiction.").

■■■■ ¶ 10 "The requirement that a nexus exist between a defendant's activities in the forum state and a plaintiff's cause of action provides the key to exercising specific jurisdiction." *Williams*, 199 Ariz. 1, ¶ 11, 13 P.3d at 283. In other words, a petitioner's claim must result from " 'alleged injuries that arise out of or relate to [the defendant's] ... activities' in the forum state." *Id.* quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174; *see also Rollin v. William V. Frankel & Co, Inc.*, 196 Ariz. 350, ¶ 14, 996 P.2d 1254, 1258 (App. 2000) (same). If the petitioner's claim and the non-resident defendant's forum-related activities are not sufficiently connected, dismissal is warranted. *In re Consol. Zicam Prod.*, 212 Ariz. 85, ¶ 11, 127 P.3d at 908. The focus of the analysis is "the relationship between the defendant, the forum, and the litigation." *Williams*, 199 Ariz. 1, ¶ 11, 13 P.3d at 283.

■■■■ ¶ 11 In her motion to dismiss, Sabine asserted she was a citizen of Germany who had never resided or been domiciled in the United States. She further stated John left their marital residence in Spain in June 2014 and moved to Tucson, that she did not move with him, and that the parties had lived separately after that time. Sabine visited John in Tucson for brief periods in 2014 and 2015 in an effort to reconcile their marriage, and during one of those visits, she co-signed the lease on John's apartment because he told her "she was required to sign [it]." She maintained she did not "have a copy of the lease, did not intend to submit herself to jurisdiction in Arizona, and did not consult with an attorney [as to] the effect of signing the lease." She also asserted she did not have

"significant minimum contacts with the state."

¶ 12 In response, John admitted several of Sabine's assertions, including that she had "visited with [him] in Tucson ... for brief periods in 2014 and 2015, in an effort to reconcile their marriage," but he disputed some others, including Sabine's claim that she lacked significant minimum contacts with Arizona. John also submitted an affidavit asserting the parties "began discussions regarding a move to the United States" and "mutually agreed that [John] would explore employment in ... three [U.S.] cities and ultimately permanently move to the United States." According to John, he immediately sought employment in Tucson pursuant to this agreement, and Sabine had agreed this was an appropriate choice because "that is where [he] ha[s] family." John further stated that Sabine had agreed to move to Tucson if he was offered a job there, and that she told his mother and a hairstylist that she planned to move to Tucson.

¶ 13 John also reported that, during one of Sabine's visits, the parties "jointly selected an apartment where [they] decided [John] would live while [they] were seeking a home to purchase," and they both signed the lease.[4] On other visits, they spent time with a realtor looking at houses, and Sabine told the realtor, "I know we've taken a lot of your time but we'll be buying something soon." Finally, John asserted he "would never have moved to Tucson but for the mutual agreement we made to permanently relocate to Tucson in order to be together."

¶ 14 Even viewing the facts in the light most favorable to John, *see In re Consol. Zicam Prod.*, 212 Ariz. 85, ¶ 7, 127 P.3d at 907, we disagree that Sabine's contacts with Arizona satisfy minimum contacts requirements. Sabine's promise[5] to move to Arizona is not dispositive because John did not allege that Sabine unilaterally decided not to move to Tucson, or that her failure to do so gave

---

4. We note John did not submit a copy of the lease or make it part of the record.

5. John repeatedly characterizes the couple's plan to move to Tucson as a "contract" but we are unaware of a legally cognizable claim for breach

of contract based on a spouse's breaking a promise to relocate, and John has provided no on-point authority to support such a claim. Moreover, we note that John has not asserted a breach of contract claim against Sabine.

rise to him filing the petition for dissolution.[6] *Cf. Williams,* 199 Ariz. 1, ¶ 11, 13 P.3d at 283; *see also Engle v. Engle,* 412 Pa.Super. 425, 603 A.2d 654, 658 (1992) (party's contract with out-of-state individual insufficient to establish minimum contacts with the forum state). Further, it does not appear—nor did John allege—that Sabine's act of co-signing the lease on his apartment gave rise to or related to his decision to file for dissolution. *Cf. Williams,* 199 Ariz. 1, ¶ 11, 13 P.3d at 283. As the trial court noted below, while Sabine's entering into the lease with John "could be a basis for finding speci[fic] jurisdiction on a subsequent breach of contract action, it is not the type of purposeful action that would support a claim of jurisdiction in an unrelated divorce proceeding." Moreover, John having never introduced a copy of the lease and there being no information about its terms or period, there is no evidence relating it to the parties' separation or John's filing for divorce. Indeed, John's affidavit indicates the lease was entered during 2014, but he filed for dissolution in January 2016, at least suggesting a standard 12–month residential lease could have expired before the divorce was contemplated. Thus, John has not shown a nexus between Sabine's activities in the forum state and his cause of action. *See id.; see also Muckle v. Superior Court,* 102 Cal.App.4th 218, 125 Cal.Rptr.2d 303, 306, 311 (2002) (finding no personal jurisdiction over former resident husband whose only "purposefully directed … activit[y]" before wife filed for divorce was to "provide some shelter" by purchasing a mobile home for her).

¶ 15 Moreover, even if the minimum contacts requirement was satisfied here, we agree with Sabine that it would not be fair or reasonable to require her "to defend this matter in Arizona." *See Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (ultimate determination of reasonableness depends on several factors, including burden on defendant, interests of the forum state, and plaintiff's interest in obtaining relief); *see also Tiscornia v. Tiscornia,* 154 Ariz. 376, 377, 742 P.2d 1362, 1363 (App. 1987) (state's interest best served when careful inquiry made into reasonableness of asserting jurisdiction by weighing burden on foreign party against minimal state interests).

¶ 16 Arizona has minimal contacts with this marriage and dissolution, and several factors militate against the court's exercising its jurisdiction over Sabine. *Cf. Tiscornia,* 154 Ariz. at 377, 742 P.2d at 1363. The parties never resided together in the United States, let alone Arizona, and they spent the entire duration of their thirteen-year marriage in Europe until John relocated to Tucson in 2014. Sabine has never lived in the United States, and there is no evidence that the parties jointly own any property in Arizona.[7] Moreover, they allegedly entered into a Post–Marital Agreement[8] in Europe before John moved to Arizona, and it appears most—if not all—of their joint property is held in Europe. Thus, considering the heavy burden on Sabine, a foreign defendant, the international context of the matter, and the slight interests of the state, we conclude these factors militate against the exercise of personal jurisdiction over Sabine and support the trial court's determination. *Cf. Planning Grp.,* 226 Ariz. at 270–71 ¶¶ 38–39, 246 P.3d at 351.

### Dissolution of the Marriage

¶ 17 John alternatively argues that, even if personal jurisdiction over Sabine was lacking, he nevertheless was entitled to a divorce because he met the jurisdictional requirements of A.R.S. § 25–312 and "[t]he

---

6. John does allege for the first time in his reply brief that "the filing of this action results from [Sabine]'s breach of th[e] contract" to relocate to Arizona, but that argument comes too late and is waived. *See Romero v. Sw. Ambulance,* 211 Ariz. 200, ¶¶ 6–7 & n.3, 119 P.3d 467, 470–71 & n.3 (App. 2005) (argument raised for first time in reply brief waived).

7. At oral argument, John's counsel asserted the parties hold a "leasehold" property interest in Tucson, but there is no such evidence in the record, John's affidavit only having generally referred to an apartment lease being jointly executed in 2014.

8. Although referred to by both parties on appeal, this document too was not made part of the record.

outright dismissal of this matter was, thus, plain error." That statute provides that the court "shall enter a decree of dissolution of marriage if it finds ... [t]hat one of the parties, at the time the action was commenced, was domiciled in this state ... for ninety days prior to filing the petition for dissolution of marriage," that certain conciliation provisions do not apply, and that the marriage is irretrievably broken. § 25–312.

¶ 18 The trial court "may exercise this limited jurisdiction to dissolve the marriage without violating due process, even though it lacks personal jurisdiction over a non-resident party, as long as the court does not determine the monetary obligations of the parties." *Taylor v. Jarrett*, 191 Ariz. 550, ¶ 7, 959 P.2d 807, 809 (App. 1998). Although it appears John satisfied at least the first requirement of § 25–312, he did not raise this argument below and did not request in his petition, in his response to the motion to dismiss, or in his motion for reconsideration, that the trial judge make the requisite findings and grant a "divisible divorce" pursuant to § 25–312 notwithstanding personal jurisdiction over Sabine and disposition of marital property. The issue is therefore subject to waiver. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, ¶ 13, 13 P.3d 763, 768 (App. 2000) (failure to raise issue in trial court constitutes waiver on appeal).

¶ 19 John has proffered no argument or authority entitling him to a remand on this issue and we are aware of none. Nevertheless, Sabine has not argued waiver; indeed, at oral argument, her counsel indicated she would not have objected to a divisible divorce, and the issuance of an ex parte divorce decree entails a relatively straightforward procedure. Thus, in our discretion under these circumstances, and as a matter of conserving judicial resources and those of the parties, we return this case to the trial court to consider this issue. *Cf. Ritchie v. Krasner*, 221 Ariz. 288, ¶ 63, 211 P.3d 1272, 1289 (App. 2009) (addressing merits of waived issue partially "in the interests of judicial economy"); *State v. Steffy*, 173 Ariz. 90, 93, 839 P.2d 1135, 1138 (App. 1992) (addressing merits of issue not raised below partially because appellee had not argued waiver).

### Attorney Fees

¶ 20 Both parties request attorney fees on appeal pursuant to A.R.S. § 25–324 and Rule 21(a), Ariz. R. Civ. App. P. Section 25–324 requires that we examine both the financial resources of the parties and the reasonableness of their positions. *See Leathers v. Leathers*, 216 Ariz. 374, ¶ 22, 166 P.3d 929, 934 (App. 2007). The record discloses no recent information as to the parties' relative financial resources, but both sides have presented reasonable arguments on appeal, and we therefore conclude each should bear its own appellate attorney fees and costs.

### Disposition

¶ 21 For the foregoing reasons, the trial court's ruling that it lacked jurisdiction over Sabine is affirmed, but its dismissal of John's petition for dissolution is reversed and remanded for further proceedings consistent with this opinion.