NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GWENDOLYN ALOIA, et al.,
*Plaintiffs/Appellants/Cross-Appellees*,

*v.*

BIOLOGICAL RESOURCE CENTER OF ILLINOIS, LLC, et al.,
*Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 20-0243
FILED 4-28-2022

Appeal from the Superior Court in Maricopa County
No. CV2015-013391
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

Burg Simpson Eldredge Hersh & Jardine PC, Phoenix
By Michael S. Burg, David K. TeSelle, Taylor C. Young, Paul D. Friedman,
Holly Kammerer
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Stephenson & Stephenson Ltd., Barrington Hills, IL
By Robert Stephenson
*Counsel for Defendants/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Jennifer M. Perkins joined.

---

**C A T T A N I**, Chief Judge:

**¶1**        Thirty-five individual plaintiffs sued the Arizona-based Biological Resource Center, Inc. ("BRC Inc.") and its principals, Stephen Gore and his wife (collectively, the "Arizona Defendants"); the Illinois-based Biological Resource Center Illinois, LLC ("BRCIL") and its principals, Donald A. Greene and Donald Greene II (collectively, the "Illinois Defendants"); and several other defendants in Maricopa County Superior Court for claims stemming from what the plaintiffs characterized as a nationwide "illegal 'body broker' enterprise" perpetrated through a willed-body donation program.  The superior court granted the Illinois Defendants summary judgment, dismissing the claims against them based on Arizona's lack of personal jurisdiction.

**¶2**        Twelve plaintiffs—Gwendolyn Aloia, Nancy Culver, Erica Elam-Prewitt, Troy Harp, Phyllis Meadows, Anastacia Moore, Helen Peterson, Donna Rector, Mary Salinas, Gwen Timmerman, Suzanne Visser, and Richelle Wallace (collectively, "Appellants")—appealed from the judgment of dismissal.  The Illinois Defendants cross-appealed, asserting that the Appellants failed to timely appeal from the proper Rule 54(b) judgment and, alternatively, that several of the individual Appellants should be dismissed from the appeal for other reasons.  For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶3**        BRC Inc. was an Arizona corporation, founded in 2003 and owned by Stephen Gore and his wife, that operated a willed-body donation program.  BRCIL was formed several years later in Illinois.  Greene was its sole member and manager, Greene II was its director of operations, and both of them resided in Illinois.

**¶4**        In 2007, BRC Inc. and BRCIL entered a distribution agreement under which BRC Inc. supplied donated tissue and specimens from Arizona whole-body donors and BRCIL organized distribution to qualified

recipients outside the state of Arizona for research and educational use. The agreement—which characterized the relationship between BRC Inc. and BRCIL as one of "supplier–distributor,"—contemplated that BRCIL would accept tissue requests from research and educational organizations outside of Arizona, then notify BRC Inc. of the requests. BRC Inc. would supply the requested tissue either directly to the requesting organization or indirectly through BRCIL, and the recipient would make payment through BRCIL, which retained a distribution fee before forwarding the balance on to BRC Inc. Among other contract terms, BRC Inc. warranted that it received "lawful and valid informed consent" for all donations and that all tissue was obtained in compliance with applicable law.

¶5 This lawsuit was filed in Maricopa County Superior Court in 2015. After amendments and the addition of several plaintiffs, the operative complaint asserted that defendants in four states[1] had perpetrated a "national criminal enterprise and civil conspiracy . . . in the trafficking, wrongful use, and illegal purchase and sale for profit of dead human bodies and body parts." The various plaintiffs asserted different combinations of claims including violations of the Arizona and Illinois Consumer Fraud Acts, common law fraud, intentional infliction of emotional distress, intentional mishandling of dead bodily remains, civil conspiracy, racketeering, and aiding and abetting of the other listed torts. Despite the variety of claims asserted against various defendants, each claim rested on the core premise that the plaintiffs were led to believe that their deceased family members' bodies "would be treated 'with honesty, respect and dignity', and would be used for important medical research projects," but instead the donated remains were mishandled and sold for profit against donor wishes.

¶6 Ten of the Appellants—Aloia, Culver, Harp, Meadows, Peterson, Rector, Salinas, Timmerman, Visser, and Wallace—asserted claims involving the remains of Arizona residents who passed away in Arizona and donated their bodies to BRC Inc. in Arizona, and all but one of these plaintiffs were themselves Arizona residents. During discovery, these Arizona plaintiffs recalled no communication with any of the Illinois Defendants, and discovery showed that BRCIL had nothing to do with the donation process for these (or any) Arizona-based anatomical donations.

---

[1] In addition to the Arizona Defendants and the Illinois Defendants, the complaint named as defendants Michigan-based International Biological, Inc., and its principals, Arthur and Elizabeth Rathburn; and Nevada-based Platinum Training, LLC and related entities with their principals, Charles and Amy Oddo.

The other two Appellants—Elam-Prewitt and Moore—were Illinois residents whose claims involved the remains of Illinois residents who passed away in Illinois and donated their bodies to BRCIL in Illinois.

¶7            Early on, the Illinois Defendants filed a Rule 12 motion to dismiss for lack of personal jurisdiction. *See* Ariz. R. Civ. P. 12(b)(2). Given the procedural posture of the case, the court denied the motion. The court noted (but did not then resolve) the operative complaint's theory that BRCIL and Arizona-based BRC Inc. were alter egos of each other, and the court reasoned that the complaint's allegations of the Illinois Defendants' "participation, ratification, or consent to" Arizona-based activity sufficed to defeat the motion.

¶8            Later, after close of discovery, the Illinois Defendants moved for summary judgment, arguing that Arizona lacked personal jurisdiction over them. The plaintiffs opposed, asserting that (1) BRCIL was an alter ego of Arizona-based BRC Inc. and thus subject to general jurisdiction in Arizona, and (2) BRCIL was subject to specific jurisdiction in Arizona because it purposely targeted Arizona through its years-long business relationship with BRC Inc., in which BRCIL distributed tissue from the bodily remains of Arizona decedents. The superior court granted the Illinois Defendants' motion. The court concluded that BRCIL was not subject to general jurisdiction because the evidence showed BRC Inc. and BRCIL to be "separate and independent," not alter egos, and that specific jurisdiction was also absent because none of BRCIL's forum activities gave rise to the plaintiffs' claims.

¶9            In March 2019, the court signed a judgment dismissing the Illinois Defendants from the action based on the summary judgment ruling. Although this 2019 judgment affirmed that it resolved all claims against the Illinois Defendants and cited Rule 54(b), it did not include an express determination that "there is no just reason for delay." *See* Ariz. R. Civ. P. 54(b). Appellants did not attempt to appeal from the 2019 judgment, and litigation continued against other defendants.

¶10            Almost a year later, the plaintiffs moved for entry of "a Rule 54(b) compliant judgment"—one including an express determination of no just reason for delay. Over the Illinois Defendants' objection, the superior court agreed that the 2019 judgment was not final without that determination, and in March 2020, the court entered a final Rule 54(b) judgment dismissing the Illinois Defendants, this time with an express determination of no just reason for delay.

¶11        Appellants timely appealed the 2020 judgment, and the Illinois Defendants timely cross-appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.        Preliminary Matters.

¶12        The Illinois Defendants' cross-appeal raises issues bearing on the propriety and appropriate scope of the appeal. First, they urge that the 2019 judgment was final and appealable when entered, which, if true, would mean Appellants' notice of appeal was untimely and we lack appellate jurisdiction. Second, they assert that, due to subsequent rulings in the litigation, some of the Appellants lack any basis to appeal the dismissal. We address each contention in turn.

### A.        Appellate Jurisdiction.

¶13        The Illinois Defendants assert that the superior court erred by concluding the 2019 judgment was not final under Rule 54(b), and thus that the court's entry of the 2020 judgment was improper and could not properly reopen the time for Appellants to appeal. We review de novo the court's determination as to finality of the 2019 judgment. *See Madrid v. Avalon Care Ctr.-Chandler, L.L.C.*, 236 Ariz. 221, 223, ¶ 3 (App. 2014); *see also Kim v. Mansoori*, 214 Ariz. 457, 459, ¶ 6 (App. 2007).

¶14        Generally, our appellate jurisdiction "is limited to final judgments which dispose of all claims and all parties." *Musa v. Adrian*, 130 Ariz. 311, 312 (1981) (noting the general rule against piecemeal appeals); *see also* A.R.S. § 12-2101(A)(1); Ariz. R. Civ. P. 54(c). Under Rule 54(b), however, the superior court may certify certain otherwise-partial rulings as final, immediately appealable judgments:

> If an action presents more than one claim for relief . . . or if multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay and recites that the judgment is entered under Rule 54(b).

Ariz. R. Civ. P. 54(b); *see also, e.g., Madrid*, 236 Ariz. at 224, ¶¶ 7–8.

¶15        To qualify for Rule 54(b) certification, the ruling must in fact dispose of at least one claim or one party. *See Musa*, 130 Ariz. at 313; *Davis*

*v. Cessna Aircraft Corp.*, 168 Ariz. 301, 304 (App. 1991). And—not least as a means to clarify appealability of a ruling that would not otherwise be appealable, *see Stevens v. Mehagian's Home Furnishings, Inc.*, 90 Ariz. 42, 44 (1961)—the rule requires an "express determination" of no just reason for delay and a recital of entry pursuant to Rule 54(b). Absent either of those elements, the ruling remains interlocutory and is not yet appealable:

> If there is no such express determination and recital, any decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Ariz. R. Civ. P. 54(b); *see also Stevens,* 90 Ariz. at 44–45 (noting that the rule requires "the determination and direction," else the judgment is not final and not immediately appealable); *Maria v. Najera*, 222 Ariz. 306, 307, ¶ 6 (App. 2009); *Pulaski v. Perkins*, 127 Ariz. 216, 217 (App. 1980) (reiterating that "the lack of a 54(b) determination defeats finality"); *cf. Grand v. Nacchio*, 214 Ariz. 9, 16, ¶ 17 & n.3 (App. 2006) (suggesting, in dicta, that a statement of "no just reason for delay" and direction to enter judgment would qualify even without direct citation to Rule 54(b)).

**¶16** Here, the superior court's summary judgment ruling on personal jurisdiction resolved all claims against the Illinois Defendants and thus potentially qualified for 54(b) certification. And the form of judgment submitted by the Illinois Defendants and signed by the superior court in March 2019 invoked entry under 54(b): "Pursuant to Rule 54(b), this Judgment is to all claims between Plaintiffs and the Illinois Defendants only, and there are no further matters that remain pending between Plaintiffs and the Illinois Defendants." But it did not include an express determination of no just reason for delay. *See* Ariz. R. Civ. P. 54(b). Without any such express determination, the ruling was not final and appealable.

**¶17** The Illinois Defendants assert to the contrary that including the phrase "no just reason for delay" is neither necessary nor sufficient for a judgment to be final and immediately appealable under Rule 54(b). They posit instead that a qualifying ruling (here, a ruling that fully resolved the claims against particular parties, even though claims against others remained outstanding) coupled with an intent to enter a partial final judgment under 54(b) judgment is all that is required. *See, e.g.*, *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990).

¶18        Both of those elements—that the ruling dispose of at least one claim or party, and that the court "recite[] that the judgment is entered under Rule 54(b)"—are required by the text of the rule. Ariz. R. Civ. P. 54(b); *see, e.g.*, *Musa*, 130 Ariz. at 313; *Stevens,* 90 Ariz. at 44–45. But the rule also explicitly requires that the court "expressly determine[] there is no just reason for delay." Ariz. R. Civ. P. 54(b). The Illinois Defendants' intent-only-based interpretation runs contrary to the stated requirement of an "express" determination. *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 20 (App. 2012) (noting that, because a rule's language is the best indication of its meaning, we "give effect to each word, phrase and clause included by the supreme court") (citation omitted).

¶19        Even though the superior court may have intended the 2019 judgment to be immediately appealable, without the requisite "express determination" it was not. Ariz. R. Civ. P. 54(b); *see also Stevens*, 90 Ariz. at 44–45; *Madrid*, 236 Ariz. at 224, ¶ 8. Because that ruling remained interlocutory, the court properly granted the plaintiffs' subsequent request for "a Rule 54(b) compliant judgment" of dismissal. The resulting 2020 judgment included the necessary express determination of no just reason for delay and recital that judgment was entered under Rule 54(b), and thus it was immediately appealable. *See Madrid*, 236 Ariz. at 224, ¶ 8. Appellants timely appealed thereafter, so we have appellate jurisdiction under A.R.S. § 12-2101(A)(1). *See also* ARCAP 9(a).

B.        **Proper Appellants.**

1.        **Illinois Plaintiffs.**

¶20        The Illinois Defendants argue that the appeal should be dismissed as to Elam-Prewitt and Moore (the two Appellants from Illinois) because they were no longer parties to the underlying case by the time of the 2020 judgment. Appellants did not address this argument in their responsive brief. Although we could deem this omission a confession of error, we decline to do so because the issue is not debatable. *See Savord v. Morton*, 235 Ariz. 256, 259, ¶ 9 (App. 2014); *Bulova Watch Co. v. Super City Dep't Stores of Ariz., Inc.*, 4 Ariz. App. 553, 556 (App. 1967).

¶21        Several months after the superior court's summary judgment ruling in favor of the Illinois Defendants, the plaintiffs proceeded to trial against defendant Stephen Gore. During trial, Gore moved to dismiss Elam-Prewitt and Moore's claims against him. The court granted the motion and, in January 2020, entered judgment in Gore's favor dismissing those claims.

**¶22** The Illinois Defendants suggest that at that point (which was before entry of the appealable 2020 judgment dismissing the claims against the Illinois Defendants), Elam-Prewitt and Moore "were not parties to this case" and thus could not file an appeal. But the judgment for Gore dismissed Elam-Prewitt and Moore's claims against *Gore*, not their claims against *the Illinois Defendants*. Their claims against the Illinois Defendants, although substantively resolved by the summary judgment ruling on personal jurisdiction, had not been reduced to a final, appealable judgment until the 2020 judgment from which Appellants (including Elam-Prewitt and Moore) timely appealed. Accordingly, we deny the Illinois Defendants' request to dismiss the appeal as to these two Appellants.

### 2. No-Liability Plaintiffs.

**¶23** The Illinois Defendants next argue that the appeal should be dismissed as to Meadows, Peterson, Rector, Salinas, Visser, and Wallace because the jury returned verdicts against these six. The Illinois Defendants assert that the claims against them were premised solely on vicarious liability for wrongdoing by Gore and BRC Inc., so the jury verdicts in Gore's favor—from which these six did not appeal—moot the appeal as to these six Appellants. Appellants again failed to address this argument in their responsive brief, but the issue is not debatable, so we decline to construe this omission as a confession of error. *See Savord*, 235 Ariz. at 259, ¶ 9; *Bulova Watch*, 4 Ariz. App. at 556.

**¶24** At trial, Gore secured defense verdicts against Meadows, Peterson, Rector, Salinas, Visser, and Wallace on their remaining claims against him. These verdicts could not, however, have resolved all claims against the Illinois Defendants because the complaint alleged claims for direct, not just vicarious, liability against them. *See Ford v. Revlon, Inc.*, 153 Ariz. 38, 42 (1987). And in any case, the verdicts were in favor of Gore only, not BRC Inc.; the plaintiffs obtained a default judgment in their favor against BRC Inc. Accordingly, we deny the Illinois Defendants' request to dismiss the appeal as to these six Appellants.

## II. Personal Jurisdiction.

**¶25** Appellants challenge the superior court's ruling granting the Illinois Defendants summary judgment and dismissing the claims against them for lack of personal jurisdiction. We review this ruling de novo. *See A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 566–67, 569 (1995); *Ariz. Tile, L.L.C. v. Berger*, 223 Ariz. 491, 493, ¶ 8 (App. 2010).

¶26        Arizona's long-arm rule permits exercise of personal jurisdiction to the greatest extent allowed under the United States Constitution.  Ariz. R. Civ. P. 4.2(a); *Plan. Grp. of Scottsdale, L.L.C. v. Lake Mathews Min. Props., Ltd.*, 226 Ariz. 262, 265, ¶ 12 (2011).  The test for personal jurisdiction considers whether a defendant has "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 6 (2000) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)), and thus hinges on "the nature and extent of 'the defendant's relationship to the forum State,'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1779 (2017)).

¶27        Personal jurisdiction may be either general or specific.  *Plan. Grp.*, 226 Ariz. at 265, ¶ 13.  Arizona may exercise general jurisdiction — that is, jurisdiction to hear any claim against a defendant, regardless whether the claim relates to the forum or the defendant's activities there — over resident defendants and those whose contacts are so substantial they are "essentially at home" in the forum state.  *Ford*, 141 S. Ct. at 1024 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Plan. Grp.*, 226 Ariz. at 265, ¶ 13; *Williams*, 199 Ariz. at 3, ¶ 6.  For corporations, this generally means the state(s) of incorporation and principal place of business.  *Ford*, 141 S. Ct. at 1024.

¶28        In superior court, the plaintiffs asserted that BRCIL was subject to general jurisdiction in Arizona as an alter ego of BRC Inc., an Arizona corporation.  They highlighted statements to third-parties presenting the two as being parts of the same organization, as well as regular communications between the two to coordinate inventory and distribution.  The superior court acknowledged that those statements "suggest[ed] some type of partnership or affiliation" between BRCIL and BRC Inc., but it found no evidence that the one entity controlled the other.  *See Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37 (1991).  Instead, the undisputed evidence showed the two were operated independently with separate corporate records and funds, without officers or shareholders in common and without joint management.  The court thus concluded the two were not alter egos and that there was no basis for general jurisdiction.  Appellants do not challenge this facet of the ruling on appeal, so it remains final.

¶29        Specific personal jurisdiction reaches defendants with more limited connections to the forum, but only for more limited types of claims.  *Ford*, 141 S. Ct. at 1024.  For Arizona to exercise specific jurisdiction over an

out-of-state defendant, the aggregate of the defendant's contacts with the forum must reflect purposeful conduct by the defendant targeting the forum (not just accidental contacts or those created by the plaintiff's unilateral acts), there must be a sufficient connection between those contacts and the plaintiff's claims, and exercise of jurisdiction must be reasonable. *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417, ¶ 9 (App. 2013) (citing *Plan. Grp.*, 226 Ariz. at 266, 268, 270, ¶¶ 16, 25, 37; *Williams*, 199 Ariz. at 4, ¶ 11). We consider the totality of the defendant's contacts with the forum, *Scott v. Kemp*, 248 Ariz. 380, 388, ¶ 24 (App. 2020) (quoting *Plan. Grp.*, 226 Ariz. at 269, ¶ 29), but—critical here—the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

¶30 Here, the undisputed facts showed that the Illinois Defendants purposefully directed at least a portion of their business activities toward Arizona through BRCIL's distribution agreement with Arizona-based BRC Inc. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). As part of that business relationship, BRCIL fielded out-of-state tissue requests, then coordinated (via frequent email communication and physical visits to the state) distribution from BRC Inc. in Arizona to the recipient organizations. Although the contract itself did not require BRC Inc. to fulfill the requests solely from anatomical donations made in Arizona, the Illinois Defendants admitted that all of the tissue was in fact sourced from Arizona decedents. The Illinois Defendants thus "deliberately 'reached out beyond' [their] home" in Illinois by "entering a contractual relationship centered [in Arizona]." *Ford*, 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

¶31 Notwithstanding the Illinois Defendants' contacts with Arizona, Appellants' jurisdictional argument fails because the undisputed facts showed that Appellants' claims against the Illinois Defendants did not "arise out of or relate to" those contacts with Arizona. *See Ford*, 141 S. Ct. at 1026 (emphasis omitted). As Appellants acknowledged in superior court, their claims hinged on the anatomical donation process itself, specifically BRC Inc.'s fraudulent misrepresentations "that the bodies would be used for education and research[,] not marked up in price and sold for profit to whomever, wherever, against the donor's wishes." But there was no evidence that the Illinois Defendants were involved in any manner with securing donations in Arizona. And the Arizona-based Appellants offered no evidence of *any* communication with the Illinois Defendants, much less false statements wrongfully inducing donations of Arizona decedents' bodies in Arizona.

¶32        Appellants rely primarily on the distribution agreement to attempt to connect their claims to the Illinois Defendants' contacts with Arizona. But as the superior court observed, there was nothing inherently actionable about the terms of the distribution agreement or the method by which the Illinois Defendants coordinated distribution of tissue under that contract. Any wrongfulness arose from BRC Inc.'s misrepresentations and misconduct, and no evidence linked that—the core of the plaintiffs' claims—to the Illinois Defendants' forum contacts.

¶33        Citing *Scott v. Kemp*, 248 Ariz. 380 (App. 2020), Appellants argue that the superior court wrongly ignored the bulk of the Illinois Defendants' contacts with Arizona by focusing narrowly on the Illinois Defendants' (lack of) direct communication with Arizona donors. "[J]urisdictional contacts are to be analyzed not in isolation, but rather in totality." *Plan. Grp.*, 226 Ariz. at 269, ¶ 29; *Scott*, 248 Ariz. at 388, ¶ 24; *see also Ford*, 141 S. Ct. at 1028. To support exercise of jurisdiction, however, those contacts must relate to the plaintiff's claims. *Plan. Grp.*, 226 Ariz. at 266, ¶ 16; *see also Ford*, 141 S. Ct. at 1031 (noting that in light of defendant Ford's "veritable truckload of contacts" with the forum states, "[t]he only issue is whether those contacts are related enough to the plaintiffs' suits").

¶34        Here, the superior court properly and expressly considered the totality of the Illinois Defendants' forum contacts—their business relationship with BRC Inc., including their distribution agreement, as well as a myriad of communications ancillary to that relationship. The court concluded that those contacts did not support specific jurisdiction, however, because they were not adequately related to the alleged deception and misrepresentations underlying plaintiffs' claims. Put simply, the claims did not come about "because of [any] 'activity [or] occurrence' *involving the defendant* that [took] place in [Arizona]." *Ford*, 141 S. Ct. at 1026–27 (emphasis added) (quoting *Bristol-Myers*, 137 S. Ct. at 1780–81). In contrast, exercise of jurisdiction was proper in *Scott* precisely because the defendants' contacts with Arizona (which involved their control over the operation of Arizona skilled-nursing and long-term care facilities) were closely related to the plaintiffs' claims (which were premised on negligent operation of skilled-nursing and long-term-care facilities). *Scott*, 248 Ariz. at 384–86, 388–89, ¶¶ 4, 8, 10, 24–25.

¶35        Appellants argue—as they have repeatedly asserted based on the allegations of the operative complaint—that the requisite nexus exists because the Illinois Defendants "knew the promises and assurances made to Arizona donors and intentionally disregarded donor wishes" when distributing tissue, and that they otherwise conspired with the Arizona

Defendants to perpetrate the scheme. Those well-pled factual allegations of joint action sufficed to defeat the Illinois Defendants' Rule 12(b)(2) motion to dismiss.

¶36 But to defeat the Illinois Defendants' motion for *summary judgment*, Appellants were required to produce *evidence* (not just allegations) of that knowledge and agreement or assistance in perpetrating the wrong. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 26 (App. 2008); *see also* Ariz. R. Civ. P. 56(e). The Illinois Defendants provided evidence that they were not involved with the anatomical donations in Arizona, which tracked the distribution agreement, under which BRC Inc. warranted that it had received "lawful and valid informed consent" for all donations and that all tissue was obtained in compliance with applicable law. Appellants produced no contrary evidence.

¶37 At best, Appellants attempted to link the Illinois Defendants to the alleged misconduct through their alter ego theory. But the superior court found "no probative evidence" that BRC Inc. and BRCIL were in fact alter egos of each other, a ruling Appellants have not challenged on appeal. Even Appellants' other, non-fraud-specific claims required either intent or at least knowledge of the underlying misconduct. *See, e.g.*, *Watkins v. Arpaio*, 239 Ariz. 168, 170–71, ¶ 8 (App. 2016) (intentional infliction of emotional distress); *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 332, ¶ 24 (App. 1998) (wrongful interference with a dead body); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498, ¶ 99 (2002) (civil conspiracy); *Hannosh v. Segal*, 235 Ariz. 108, 111–12, ¶ 7 (App. 2014) (racketeering); *Wells Fargo*, 201 Ariz. at 485, ¶ 34 (aiding and abetting). And the only asserted link between these claims and the Illinois Defendants connection to Arizona was Appellants' rejected alter-ego theory.

¶38 Because the Illinois Defendants' contacts with Arizona lacked an adequate connection to the claims, the superior court properly concluded that Arizona lacked specific personal jurisdiction. *See Ford*, 141 S. Ct. at 1025–26 (noting that the requirement that the suit arise out of or relate to the defendant's forum contacts "incorporates real limits" to protect out-of-state defendants). We thus affirm the summary judgment ruling in favor of the Illinois Defendants.

**CONCLUSION**

¶39 The judgment dismissing the Illinois Defendants is affirmed. As the successful party on appeal, the Illinois Defendants are entitled to an

award of their costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A).



AMY M. WOOD • Clerk of the Court
FILED: AA